UNITED STATES of America,
Plaintiff-Appellee,

v.

Remi Olu ABOD, Defendant-Appellant.

No. 84–2605
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Sept. 3, 1985.

Donald B. Dailey, Jr., Corpus Christi, Tex., for defendant-appellant.

Henry K. Oncken, U.S. Atty., James R. Gough, Robert A. Berg, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Appeal from the United States District Court for the Southern District of Texas.

Before RANDALL, DAVIS and HILL, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

Remi Olu Abod appeals his conviction on three counts of using or attempting to use a counterfeit credit card in violation of 15 U.S.C. § 1644(a). Abod asserts, inter alia, that the government failed to prove that he

knew the credit card was counterfeit, that the government failed to prove that he committed three completed acts of "using" the credit card as charged by the court and that the three-count indictment is multiplicitous. Finding no merit to these claims, we affirm the judgment of conviction.

## I.

Abod, a Nigerian national, appeared at the jewelry counter of Dillard's Department Store in Corpus Christi, Texas on June 27, 1984. Abod gave a store employee two items of jewelry he wished to purchase; to pay for the jewelry, he presented the store clerk with a Visa credit card bearing the name "Norman Skinner." The store employee prepared a sales receipt which Abod signed as Norman Skinner. Abod also presented an international driving permit, bearing the name Norman Skinner, as proof of identification. However, when the store employee telephoned the Visa credit authorization center for approval of the purchase, he was informed that the Norman Skinner Visa card was counterfeit. Corpus Christi police officers were then summoned to the store where they arrested Abod.

Abod initially admitted to a secret service agent that he had traveled from Los Angeles, California to Corpus Christi on June 27, 1984, for the express purpose of using what he thought was a stolen Visa card to purchase merchandise for resale. Abod stated that his agreement with the supplier of the card called for him to split his profit with that individual. Abod also admitted that he had purchased the counterfeit international driving permit in California at a passport photo shop. In early interviews with secret service agents, Abod denied using the card except at Dillard's. Abod eventually admitted, however, that he used the card to obtain cash at the Corpus Christi National Bank and at the Bank of Corpus Christi.

Counts I and II of the indictment charged that Abod in two separate instances knowingly used a counterfeit credit card to procure $2,400 cash from each of the two Corpus Christi banks. Count III charged that Abod knowingly attempted to obtain goods valued at $2,335.20 from Dillard's Department Store. Abod was convicted on each of the three counts and given prison sentences on Counts I and III and a probationary sentence on Count II. The court also ordered Abod to make restitution to the two Corpus Christi banks.

## II.

Abod contends that the evidence presented at trial failed to establish an essential element of the offenses under the charge of the district court—that Abod knew that the Visa card was counterfeit, rather than stolen.[1] We review the evidence and the inferences which may be drawn therefrom in the light most favorable to the verdict, see *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), and must judge that evidence as sufficient to support a conviction if "a reasonable trier of fact could find the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell*, 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). See also *United States v. Barnes*, 761 F.2d 1026, 1030–31 (5th Cir.1985).

Despite his contention that actual knowledge of the counterfeit nature of the card was an essential element of each count by virtue of the court's instruction, Abod contends that the trial court failed to give an adequate instruction on this requirement and that Abod's counsel rendered Abod ineffective assistance by failing to request such an instruction. We reject both of these contentions because the court did so charge the jury.

---

1. The district court charged the jury that Abod could not be convicted unless the government proved that Abod knew that the Visa card was counterfeit. The government concedes that the court's instructions, to which the government did not object, became the law of this case. See *United States v. Spletzer*, 535 F.2d 950, 954 (5th Cir.1976). Hence, we need not determine whether knowledge of the counterfeit character of a credit card is, in all cases, an essential element of the crime of using a counterfeit card under 15 U.S.C. § 1644(a).

■ Abod did not testify on his own behalf at the trial; however, Abod's written and oral statements were introduced by the government. Abod admitted to the secret service agent that he obtained the bogus credit card and the counterfeit international driver's permit in Los Angeles. After traveling from Los Angeles to Corpus Christi, he admitted presenting the bogus card at the three establishments named in the indictment. Abod points to his assertions in these statements that he thought the card was stolen and argues that the government produced no evidence that he knew the card was counterfeit. The jury, however, was not obliged to believe Abod's assertions that he thought the card was stolen. Given the extent of Abod's admitted involvement in this criminal endeavor, the jury was entitled to infer from the evidence that Abod was not ignorant of the actual, counterfeit nature of the Visa card.

### III.

Abod contends that his conviction on three counts of using the same counterfeit Visa card violate the fifth amendment prohibition against double jeopardy. Abod asserts that, under section 1644(a), all fraudulent transactions with a single credit card which a defendant conducts within a one year period must be aggregated to constitute a single offense. Abod claims further that any contrary interpretation of section 1644(a) would render the statute impermissibly vague and would violate the fifth amendment right to due process.

Section 1644 provides:

(a) Whoever knowingly in a transaction affecting interstate or foreign commerce, uses or attempts or conspires to use any counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained credit card to obtain money, goods, services, or anything else of value which within any one year period has a value aggregating $1,000 or more; ...

\* \* \* \* \* \*

shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

In *United States v. Mickelberg*, 517 F.2d 246 (5th Cir.1975), we construed the term "transaction affecting interstate or foreign commerce" in the similar predecessor to the current section 1644(a) as simply a jurisdictional prerequisite to liability under federal law. We determined that "transaction" contemplated both a single transaction that exceeded the $5,000 monthly minimum of that statute and a series of transactions. See 517 F.2d at 252. In light of *Mickelberg*, there can be no doubt that each of Abod's three uses of the Visa card constituted a separate "transaction affecting interstate ... commerce."

■ Abod argues that the monetary threshold requirement of section 1644(a) requires aggregation of his three transactions into a single offense. The current version of section 1644 was amended in 1974 to substitute the words—"or anything else of value which within a one year period has a value aggregating $1,000 or more"—for the statute's prior requirement that the fraudulently obtained goods or services simply have "a retail value aggregating $5,000 or more."[2] See Act of October 28, 1974, Pub.L. No. 93–495, 88 Stat. 1500; 1974 U.S.Code Cong. & Ad.News 1724, 1748. The legislative history of the 1974 amendments, while scant, reflects Congressional intent to strengthen the effectiveness of federal prohibitions on credit card fraud.[3] In light of this history, we find nothing on the face of the statute to indicate that Congress intended to require the aggregation in a single offense of all

---

**2.** Before the 1974 amendment, the text of the statute provided:

§ 1644 Fraudulent use of credit card
Whoever, in a transaction affecting interstate or foreign commerce, uses any counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained credit card to obtain

goods or services, or both, having a retail value aggregating $5,000 or more, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

**3.** 120 Cong.Rec. S 19213 (daily ed. June 13, 1974) (statement of Sen. Brock).

transactions conducted within a one year period. The effect of such a reading of the statute would be to permit criminals to enjoy liability-free use of a bogus credit card for an entire year after they obtain $1,000 worth of goods by fraudulent use of the bogus card. On the contrary, Congress intended to broaden the scope of federal criminal liability by lowering the jurisdictional threshold to $1,000 and by providing explicitly that this jurisdictional amount may be met by aggregating all transactions with a single card which take place within a one-year period. We conclude that the statute, as amended, did not forbid charging Abod with a separate offense for each use of the card.

Abod's claim that he was not given fair notice of this construction of the statute is also meritless. It is axiomatic that "[t]o pass constitutional muster, a statute must give persons of ordinary intelligence fair notice that their contemplated conduct is forbidden by statute." See *United States v. Greene*, 697 F.2d 1229, 1233 (5th Cir.1983). We find no difficulty in determining that section 1644(a), as applied to Abod, is not unconstitutionally vague. The statute's $1,000 monetary threshold is purely a jurisdictional device and knowledge by an accused of this threshold is not an element of the offense. See *United States v. DeBiasi*, 712 F.2d 785, 790–91 (2d Cir.1983). Rather, the wrongful act which lies at the core of the statute and which is the focus of the statute's mens rea requirement is a defendant's use or attempted use of a bogus credit card to obtain things of value. There can be no doubt that each of Abod's three transactions constituted a separate such use of the Visa card, nor can there be any doubt that each of these transactions separately satisfied the statute's monetary jurisdictional requirement. Where a defendant embarks on a patently unlawful course of conduct, due process does not require that a statute demark the limits of his offense with algebraic exactitude. See *Boyce Motor Lines v. United States*, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952); *United States v. Griffin*, 589 F.2d 200, 207 (5th Cir.1979). In the circumstances of this case, Abod could not have harbored any reasonable belief that he was not subject to separate punishment for each fraudulent transaction and, hence, he was not denied due process.

IV.

Although the third count of Abod's indictment charged him with the offense of attempting to use a Visa card to obtain goods from the Dillard's store, the trial court gave the jury no instruction on the elements of the crime of attempt. The court instead told the jury it could not convict Abod unless the government proved that he actually used the card in all three transactions. The government did not object to this instruction. Abod asserts that this instruction became the law of this case and that no evidence was introduced to support a finding of such use of the Visa card.

By instructing the jury that proof of the crime of attempt required proof of use of the card, the trial court added an element to the government's burden of proof which was clearly not required by either the statute or the terms of Abod's indictment. We need not decide whether the trial court's instruction became the law of this case, because the evidence against Abod was sufficient to permit a reasonable jury to conclude that Abod's conduct in the Dillard's transaction amounted to a "use" of the credit card.

The evidence established that Abod both presented the Visa card to the store employee as payment for the items of jewelry which he wished to obtain and that Abod signed the credit card form after it was imprinted with the counterfeit card. Abod thus took the last act that was within his power to obtain the goods. It is precisely this "use" of a counterfeit card "to obtain" items of value which constitutes the completed act proscribed by section 1644(a). Because proof of the completed crime necessarily required proof of all of the elements of the crime of attempt, there

can be no doubt that the jury considered Abod guilty of the offense charged in Count III of his indictment.[4]

## V.

Abod complains that the trial court acted improperly in its treatment of a plea bargain tentatively reached between Abod and the government. The record reveals that the government agreed to dismiss the second and third counts of Abod's indictment in return for Abod's plea of guilty to the first count of the indictment. At the Rule 11 proceedings, however, Abod refused to admit to knowledge of the counterfeit nature of the card—a factor which the court considered an essential element of the crime. The court informed Abod that in view of his refusal to admit to an essential element of the crime, a plea of guilty would not be "a wise choice." Abod then relented and agreed to go to trial.

 Abod contends that the court improperly intervened in the plea bargaining process. This contention is frivolous. The trial court did nothing more than address the defendant and his counsel in open court as required by Rule 11, F.R.Cr.P. Rule 11 requires the court to assume an active role in considering a plea of guilty in order to assure the protection of the defendant's right to trial. See generally *United States v. Robertson,* 698 F.2d 703, 707–08 (5th Cir.1983). The trial court's conduct in this case exhibited scrupulous concern for the defendant's rights and was in no way improper.[5]

---

**4.** Abod also contends that the trial court amended the indictment by instructing the jury that Abod could be convicted on each count by proof of his receipt of "money or property" (rather than money on Counts I and II and "goods" on Count III, as charged in the indictment). Because there was no evidence presented to support the proposition that Abod received anything other than money in connection with the uses of the card charged in Counts I and II and goods in connection with the attempted use charged in Count III, Abod presents no reversible error. See *United States v. Ylda,* 653 F.2d 912, 914 (5th Cir.1981).

**5.** Abod claims that the trial judge erred in his reluctance to accept Abod's plea and that this reluctance must be viewed as an improper re-

## VI.

 Several weeks after sentencing Abod, the trial court entered an order styled "Order of Restitution" directing Abod to repay the money that he fraudulently obtained from the Corpus Christi banks. Restitution is not authorized under 18 U.S.C. § 3579 for the offenses on which defendant was convicted and sentenced and the restitution was not required as a condition of probation. The order of restitution is therefore vacated.

The judgment of the conviction is AFFIRMED; the order of restitution is VACATED.

fusal to accept the plea. The simple answer to this complaint is that the record demonstrates that Abod voluntarily withdrew his guilty plea.

Abod also claims that he received ineffective assistance of counsel in that his attorney did not inform the trial court of its power to accept Abod's plea despite Abod's refusal to admit that he knew the credit card to be counterfeit. The record does not indicate that the trial court was ignorant of its power to accept Abod's plea given the factual basis supporting it, see *United States v. Jack,* 686 F.2d 226, 230 (5th Cir.1982). Hence, Abod meets neither the prejudice nor the deficient performance prongs of the *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1982), test.