**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Beverly C. RYAN, Defendant–Appellant.**

No. 88–2094.

United States Court of Appeals, Tenth Circuit.

Jan. 16, 1990.

---

356

David J. Phillips, Asst. Federal Public Defender, D. Kansas, Kansas City, Kan. (Charles D. Anderson, Federal Public Defender, D. Kansas, Kansas City, Kan.), for defendant-appellant.

Robert S. Streepy, Asst. U.S. Atty., Kansas City, Kan. (Benjamin L. Burgess, Jr., U.S. Atty., and Leon J. Patton, Asst. U.S. Atty., Kansas City, Kan., were also on the brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, SETH and TACHA, Circuit Judges.

HOLLOWAY, Chief Judge.

Appellant Beverly Ryan was charged by indictment on two counts of unlawful use of credit cards, stolen or obtained with intent to defraud, in transactions affecting interstate commerce and obtaining goods of an aggregate value of $1,000 or more in violation of 18 U.S.C. §§ 1029(a)(2) and 2. Defendant filed a motion to dismiss, "for the reason that this Court lacks jurisdiction of the subject matter and venue is improperly placed in Kansas." I R. Item 11 at 1. After hearing argument, the district court denied the motion. Defendant then entered a conditional plea of guilty to one of the counts against her, preserving, under Fed.R.Crim.P. 11(a)(2), for appeal the issue of aggregation of amounts from transactions in different states to satisfy the jurisdictional amount. Following conviction and sentence, defendant filed a timely appeal. We affirm.

## I. FACTS

The facts, for purposes of this appeal, are undisputed. On February 24, 1988, defendant Ryan was indicted on two counts of violating 18 U.S.C. § 1029(a)(2).[1] Count One stated that "in the District of Kansas, and elsewhere, ... in transactions affecting interstate commerce," Ms. Ryan "did knowingly and with intent to defraud, traffic in or use one or more unauthorized access devices, namely Mastercard credit cards, ... that were stolen or obtained with the intent to defraud, and by such conduct obtained goods of an aggregate value of $1,000.00 or more." Count Two was identical, except that it referred to a VISA card.

At the motion to dismiss and plea hearing, the government stated that it had evidence of the following facts: In March and April, 1987, Beverly Ryan, an employee of the United Missouri Bank in Kansas City, Missouri, took credit cards which had been returned by their holders to the bank. Ms. Ryan used these cards, presumably to make purchases, in Missouri and Kansas.

---

1. In relevant part, 18 U.S.C. § 1029 provides:
    (a) Whoever—

    (2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period;

    shall, if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.

In addition, she gave one of the cards to her ex-husband to use. III R. 13–14.

The total amount charged was over $1000, but the government concedes that less than $1000 was charged in Kansas. Brief of Appellee at 2. Ms. Ryan was apprehended after a store clerk in Olathe, Kansas, called for authorization on the VISA card which she was attempting to use. III R. 14. Ms. Ryan moved to dismiss, because she asserted that in order to be prosecuted in the United States District Court of Kansas, at least $1000 worth of value must have been obtained in Kansas alone. I R. Item 11. She asserted, and continues to assert, that amounts charged in different states cannot be aggregated to reach the $1000 jurisdictional amount.

The district court denied the motion and accepted Ms. Ryan's conditional plea of guilty to Count One. III R. 16. The other count was dismissed. Ms. Ryan was sentenced to a three-year suspended prison sentence with three years of probation. She was also ordered to make restitution and pay an assessment to the Crime Victims Fund. II R. 5–6.

The issues raised on appeal are: 1) can the jurisdictional amount for prosecution under 18 U.S.C. § 1029 be satisfied by aggregating amounts from different districts? 2) was venue properly placed in the District of Kansas for prosecution? 3) if aggregation is proper, do amounts charged to credit cards in Missouri affect only intrastate commerce, thus making them unavailable for aggregation?

## II. AGGREGATION OF AMOUNTS

■ Defendant Ryan first asserts that amounts of value of things obtained in different districts cannot be aggregated in order to reach the jurisdictional amount. We disagree.

The broad wording of the statute itself indicates that aggregation should be allowed between districts. The statute provides that anyone who knowingly *"uses one or more unauthorized access devices* during any one-year period, and by such conduct *obtains anything of value aggregating $1,000 or more"* is guilty of the offense if the action affects interstate or foreign commerce. 18 U.S.C. § 1029(a) (emphasis added). This wording is broad and there is no mention of geographical limitations. We believe that the statute means what it says, and we are unwilling to read into it a requirement which would undermine the statute's clear purpose.

In order to be convicted of a violation of 18 U.S.C. § 1029(a)(2), three elements must be satisfied: First, the person must have knowingly and with intent to defraud trafficked in, or used, one or more access devices (such as credit cards) without authorization. Second, the person must, as a result, have obtained anything of value aggregating $1000 or more during a yearlong period. Finally, the offense must have affected interstate or foreign commerce. 18 U.S.C. § 1029(a).

Section 1029 was enacted in 1984 as a response to the growing importance of credit cards and other "access devices" in our society and to increasingly sophisticated criminal activity in this area. H.R. Rep. No. 894, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3689–3690. One of its purposes was to close the loopholes of already existing legislation under the Truth in Lending Act, 15 U.S.C. § 1644, and the Electronic Funds Transfer Act, 15 U.S.C. § 1693n(b). Those statutes prohibit fraudulent use of credit cards and debit instruments. However,

> [b]oth of these statutes use a jurisdictional amount of $1,000 of activity in *each* instrument within 1 year; industry representatives state that the organized groups generally stay just under this amount but use many different counterfeit or stolen cards or debit instruments.

H.R.Rep. No. 894, 98th Cong., 1984 U.S. Code Cong. & Admin.News at 3691. *See also United States v. Iredia*, 866 F.2d 114, 120 (5th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989); *United States v. Brewer*, 835 F.2d 550, 553 (5th Cir.1987); *United States v. Newman*, 701 F.Supp. 184, 186 (D.Nev.1988).

Congress stressed that neglect of white collar crimes such as credit card fraud "is a

great mistake and in fact an attack on white collar crime can often be much more productive, economically, to this country than the more publicized emphasis on violent crime." H.R.Rep. No. 894, 98th Cong., 1984 U.S.Code Cong. & Admin.News at 3690. The House Committee on the Judiciary found evidence of the deterrent power of the law when enforced in the area of white collar crime. By using the phrase "affects interstate or foreign commerce," the Committee intended to establish "a broad jurisdictional basis." *See* H.R.Rep. No. 894, 98th Cong., 1984 U.S.Code Cong. & Admin.News at 3702; *Newman*, 701 F.Supp. at 186–87.

At the same time, Congress recognized that not every credit card crime warrants federal attention. For example, the use of counterfeit cards is considered more serious than the misuse of genuine cards; there is therefore no threshold dollar amount for producing or trafficking in counterfeit cards. H.R.Rep. No. 894, 98th Cong., 1984 U.S.Code Cong. & Admin.News at 3699. For misuse of genuine credit cards, "certain thresholds contained in the bill, such as the dollar amount threshold on trafficking in or using unauthorized devices . . . will insure that Federal involvement is concentrated on those situations where they can best supplement the efforts of State and local governments." *Id.* at 3702. It is this fact to which defendant Ryan points in her assertion that amounts should not be aggregated from different districts in order to meet the jurisdictional amount. She argues that small amounts from different districts are better left to the States to handle.

However, Congress also limited federal jurisdiction with an additional constraint: the offense must affect interstate or foreign commerce. 18 U.S.C. § 1029(a). Thus in order to be convicted of violating the statute, one must obtain value of at least $1000 and the offense must affect interstate or foreign commerce. This second

requirement, in addition to the threshold amount, ensures that the federal government will involve itself in those cases which it is best able to handle and in which it has the most interest. *Cf. United States v. Mikelberg*, 517 F.2d 246, 252 (5th Cir.1975), *cert. denied*, 424 U.S. 909, 96 S.Ct. 1104, 47 L.Ed.2d 313 (1976) (for purposes of 15 U.S.C. § 1644, "Congress intended to confine the aggregating of purchases only to those purchases made 'in a transaction affecting interstate or foreign commerce.' "). Here both elements were alleged—the amount of goods obtained was charged to be of an aggregate value of $1,000 or more, and the offense was allegedly committed "in transactions affecting interstate commerce."

We are not persuaded by defendant's arguments based on *Travis v. United States*, 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961). She argues under *Travis* that here there was an offense committed only where goods of a value of at least $1,000 were obtained. She says that *Travis* held that the offense of filing a false affidavit was committed only where the filing of the affidavit was completed—in the District of Columbia—in violation of 18 U.S.C. § 1001, and that here the offense had to be completed by obtaining $1,000 of goods in Kansas for the offense to be committed there. In *Travis*, however, the only place where a false affidavit was "on file" with the Board and in a matter "within [its] jurisdiction," 18 U.S.C. § 1001, was in the District. The broad terms of § 1029(a) show a very different intention on the part of Congress here and the special statutory limitations of *Travis* are lacking.[2]

We are likewise unpersuaded by defendant's contention resting on *Schaffer v. United States*, 362 U.S. 511, 517, 80 S.Ct. 945, 948, 4 L.Ed.2d 921 (1960), that there the transactions had to have enough relationship to be properly charged as one offense (transporting stolen goods in inter-

---

**2.** The broad scope of the statute becomes even more apparent when one considers that in 1974, the Truth in Lending Act was amended to reduce the jurisdictional amount from $5000 to $1000, 15 U.S.C. § 1644, *as amended by* Act of

Oct. 28, 1974, Pub.L. No. 93–495, so that the federal government would have more power to prosecute credit card crimes. *United States v. Abod*, 770 F.2d 1293, 1297 (5th Cir.1985).

state or foreign commerce) and that the *Schaffer* opinion did not suggest that the case could have been tried anywhere except in New York where the value of the stolen goods aggregated the required $5,000 amount. 18 U.S.C. § 2314. *Schaffer* makes no holding on venue limitations and the theory of aggregation under § 2314 in *Schaffer* for its transportation offense is based on wording that is again materially different. Here § 1029(a) broadly prohibits using one or more unauthorized access devices during any one year period to obtain anything of value aggregating $1,000 or more during the period—which logically combines the wrongful use of one or more access devices in difference places, with no geographical limitation, the only requirement being that the offense affects interstate or foreign commerce.

Defendant Ryan protests that under our interpretation a person can be prosecuted if she charges only $20 in each of the fifty states. However, if each of those fifty transactions affects interstate commerce, there is no reason why the statute should not apply. In fact, as the government pointed out at the time Ms. Ryan made her motion to dismiss, III R. 5–6, States might be hesitant to prosecute for such small amounts; thus under defendant Ryan's interpretation, persons might be free to steal small amounts with impunity if the federal government does not prosecute. Moreover, Ms. Ryan's argument "cuts both ways," for her interpretation would leave persons free to charge $999.99 in each State for a total of $49,999.50 with no federal prosecution. Given that Congress intended to close similar loopholes in predecessor statutes, it seems illogical that Congress intended to leave such a loophole.

As pointed out, Congress meant to establish broad authority to punish credit card crime. This is true not only in the case of § 1029, but also in the case of its predecessor statute, 15 U.S.C. § 1644. *See United States v. Lomax,* 598 F.2d 582, 584 (10th

Cir.1979); *United States v. Abod,* 770 F.2d 1293, 1296–1297 (5th Cir.1985); *United States v. De Biasi,* 712 F.2d 785, 790 (2d Cir.), *cert. denied sub nom. Eboli v. United States,* 464 U.S. 962, 104 S.Ct. 397, 78 L.Ed.2d 339 (1983).[3] It is true that "[w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States,* 349 U.S. 81, 83, 75 S.Ct. 620, 622, 99 L.Ed. 905 (1955). Moreover, "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance...." *United States v. Culbert,* 435 U.S. 371, 379, 98 S.Ct. 1112, 1116, 55 L.Ed.2d 349 (1978) (quoting *United States v. Bass,* 404 U.S. 336, 349, 92 S.Ct. 515, 523, 30 L.Ed.2d 488 (1971)). Nevertheless, these maxims only apply when we are uncertain about the statute's meaning and they are "not to be used 'in complete disregard of the purpose of the legislature.'" *Scarborough v. United States,* 431 U.S. 563, 577, 97 S.Ct. 1963, 1970, 52 L.Ed.2d 582 (1977) (quoting *United States v. Bramblett,* 348 U.S. 503, 510, 75 S.Ct. 504, 508, 99 L.Ed. 594 (1955)). Here we are satisfied that the meaning of 18 U.S.C. § 1029(a) is clear from the broad and forceful terms used: "anything of value aggregating $1,000 or more during [a one-year period]...."

We hold that the amounts may be aggregated from different districts to satisfy the jurisdictional requirement in circumstances such as are alleged in the indictment.

### III. VENUE

■ Ms. Ryan also asserts that venue was improper in the District of Kansas. This argument is closely related to the contention discussed and rejected in Part II, supra.

■ The issue of venue is more than a procedural one. It has constitutional and public policy dimensions. U.S. Const., art.

---

**3.** The broad scope of the statute becomes even more apparent when one considers that in 1974, the Truth in Lending Act was amended to reduce the jurisdictional amount from $5000 to $1000, 15 U.S.C. § 1644, *as amended by* Act of

Oct. 28, 1974, Pub.L. No. 93–495, so that the federal government would have more power to prosecute credit card crimes. *United States v. Abod,* 770 F.2d 1293, 1297 (5th Cir.1985).

III, § 2, cl. 3; U.S. Const., amend. VI; *United States v. Johnson,* 323 U.S. 273, 275–276, 65 S.Ct. 249, 250–251, 89 L.Ed. 236 (1944); *United States v. Jackson,* 482 F.2d 1167, 1178 (10th Cir.1973), *cert. denied,* 414 U.S. 1159, 94 S.Ct. 918, 39 L.Ed.2d 111 (1974). The crucial inquiry for venue analysis is to determine where the crime alleged was committed. *United States v. Cores,* 356 U.S. 405, 407, 78 S.Ct. 875, 877, 2 L.Ed.2d 873 (1958). When Congress does not specify the place where the crime was committed, it "must be determined from the nature of the crime alleged and the location of the act or acts constituting it." *United States v. Anderson,* 328 U.S. 699, 703, 66 S.Ct. 1213, 1216, 90 L.Ed. 1529 (1946); *see also United States v. Medina–Ramos,* 834 F.2d 874, 876 (10th Cir.1987); *United States v. Mendel,* 746 F.2d 155, 164 (2d Cir.1984), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985); *Jackson,* 482 F.2d at 1178; *United States v. Billups,* 692 F.2d 320, 332 (4th Cir.1982); *cert. denied,* 464 U.S. 820, 104 S.Ct. 84, 78 L.Ed.2d 93 (1983); *United States v. Blecker,* 657 F.2d 629, 632 (4th Cir.1981), *cert. denied,* 454 U.S. 1150, 102 S.Ct. 1016, 71 L.Ed.2d 304 (1982). Courts usually examine the verbs employed in the statute to define the offense. *Medina–Ramos,* 834 F.2d at 876; *Mendel,* 746 F.2d at 164; *Billups,* 692 F.2d at 332; *Blecker,* 657 F.2d at 632.

In essence, we performed this analysis when we examined the wording of the statute to determine that the jurisdictional amount can be aggregated from different districts. The operative words in § 1029 which are of concern to us here are "uses," "obtains," "affects" (*i.e.* affects interstate commerce), and "aggregating." There is no dispute that defendant Ryan pled guilty to such acts in Kansas. From this basic fact it follows that venue was properly laid in the District of Kansas. Since § 1029 does not specify venue, the general venue statute applies:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may

be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

18 U.S.C. § 3237(a); *see also* Fed.R.Crim.P. 18. Defendant's venue argument is without merit.

## IV. INTERSTATE COMMERCE

■ Finally, defendant Ryan argues that the showing as to interstate commerce, which was based on Missouri transactions, was improper under § 1029. She argues that Congress intended that only transactions affecting interstate or foreign commerce be aggregated, citing *United States v. Mikelberg,* 517 F.2d at 252. Defendant says that the government prosecutor stated that the credit card (Mastercard) involved in Count One had been returned to a Missouri bank, and there came into defendant's possession. Thus those charges sought to be aggregated by the government from Missouri would have been from intrastate transactions, and they were therefore not proper for aggregation under the statute with the charges in Kansas. Brief for Appellant at 19.

We must reject this contention. Rule 11(a)(2) governing conditional pleas provides that such pleas may be made with approval of the court and consent of the government. The defendant may in such cases enter a conditional plea of guilty or nolo contendere "reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion."

Here the issue concerning interstate commerce was not reserved. We note that in the petition to enter the plea of guilty, I R. Item 16 at 1, the defendant represented to the court that she did the following acts in connection with the charges made against her:

> ... That on or about March 9, 1987, and continuing on or about April 24, 1987, in the district of Kansas and elsewhere, I, *in transactions affecting interstate commerce,* did knowingly and with intent to defraud, traffic in or use one or more unauthorized access devices described in the indictment that were sto-

len or obtained with intent to defraud, and by such conduct obtained goods in an aggregate value of $1000 or more, in violation of 18 U.S.C. Section 1029(a)(2). The amount charged in Kansas was less than $1000. (Emphasis added).

Further, the petition to enter the plea, *id.* at 3, stated that: "The Government also agrees to permit me to enter a conditional plea of guilty, pursuant to Rule 11(a)(2), reserving the right, on appeal from the judgment, to review the adverse determination of my motion to dismiss the indictment." The defendant's Motion to Dismiss specified the grounds of the motion by stating that defense counsel and government counsel "agree that neither access device specified in the Indictment was trafficked in or used to obtain goods of an aggregate value of $1,000.00 or more in the state of *Kansas.* For this reason, this Court is without subject matter jurisdiction of the case, and venue is improper in Kansas." I R. Item 11 at 2 (emphasis in original). Further, the motion argued that "[b]y mandating that goods obtained must equal or exceed $1,000.00, but without specifying a defendant could be charged in districts wherein goods valued at less than $1,000.00 were obtained, Congress, in effect mandated such charges may only be tried in districts where goods valued at $1,000.00 or more were obtained." *Id.*

The motion alleged further that "the instant case can be tried in any district wherein goods in excess of $1,000.00 were obtained. Kansas is not one of those districts concerning either count charged in the Indictment in this case." *Id.* Thus the motion of the defendant concerned the basic objection to aggregation of amounts from different states. Nowhere did the motion argue that interstate commerce as such was not affected.

We have examined the transcript of the hearing on the motion and the acceptance of the conditional plea. III R. 2–18. There it is again made clear that the defendant was making her objection to aggregation. Defense counsel said that the motion referred to a "continuing crime" but defendant argued that aggregation could not be used to show a violation in a given district to support venue there. Defense counsel

stated: "It is a continuing crime of permitting the charges to reach the total of $1,000, but we don't believe and *our whole argument is that you cannot charge in any district unless the $1,000 amount is met in each district.*" III R. 3 (emphasis added). After the argument of counsel on the motion to dismiss, stating that they would like to preserve the "legal issue on appeal," III R. at 6, the trial judge stated that he agreed they had the right to appeal "that issue even though you enter a plea on behalf of your client of guilty." III R. at 7.

The motion, the argument, the petition to enter the guilty plea and the trial judge's approval of the conditional plea failed to make any reference to interstate commerce as being at issue. Since the interstate commerce issue was not properly reserved in accordance with Rule 11(a)(2), the plea of guilty and the ensuing conviction comprehended all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. *See United States v. Broce,* —— U.S. ——, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989).

We conclude that no error has been demonstrated in the judgment and sentence and they are accordingly

AFFIRMED.