7 F.3d 1044
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ralph Carlton FISHER, also known as Kevin McCarley,
Petitioner-Appellant,
v.
Stephen W. KAISER, and Attorney General of Oklahoma,
Respondents-Appellees.
 No. 93-6008.
 United States Court of Appeals,
Tenth Circuit.
 Oct. 1, 1993.
 
 ORDER AND JUDGMENT[1]
 Before McKAY, Chief Judge, SETH, and BARRETT, Circuit Judges.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Petitioner Ralph Carlton Fisher appeals the district court's order denying his petition for habeas corpus pursuant to 28 U.S.C. 2254. Petitioner was convicted in Oklahoma state court in 1987 of three counts of uttering a forged instrument after former conviction of two or more felonies. Evidence at trial revealed that petitioner had entered a jewelry store and had bought three distinct articles of jewelry using credit cards belonging to one John Street. Petitioner signed three separate sales receipts using Mr. Street's name. Two charges were made on a Mastercard; the third charge was made on a Visa.
 
 
 3
 Because petitioner's record contained two prior felony convictions, petitioner's sentences were enhanced, and he was sentenced to three consecutive thirty-year terms for the credit card fraud. His convictions were affirmed on direct appeal. After exhausting his state collateral remedies, petitioner filed this action in the United States district court. He alleges that his conviction on three separate counts of credit card fraud subjected him to double jeopardy, that unconstitutional prior convictions were used to enhance his sentences, and that his counsel, both on the credit card charges and on the earlier convictions, were ineffective. We affirm.
 
 1986 Pleas (CRF-86-282)
 
 4
 In 1986, petitioner was charged with one count of knowingly concealing stolen property and one count of escape. Respondent asserts that petitioner pleaded nolo contendere to the property charge and guilty to the escape charge. The district court in the appeal before us rejected petitioner's contention which was that these pleas were constitutionally infirm because they were neither knowing nor voluntary.
 
 
 5
 "It is beyond dispute that a guilty plea must be both knowing and voluntary. The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.' " Parke v. Raley, 113 S.Ct. 517, 523 (1992) (citations omitted). "Whether a guilty plea is knowing and voluntary under the constitution is a question of federal law." Osborn v. Shillinger, 997 F.2d 1324, 1327 (10th Cir.1993)(citing Marshall v. Lonberger, 459 U.S. 422, 431 (1983)). "The voluntariness of [a] plea can be determined only by considering all of the relevant circumstances surrounding it.' " Id. (quoting Brady v. United States, 397 U.S. 742, 749 (1970)); see also United States v. Wicks, 995 F.2d 964, 978 (10th Cir.1993) (determination dependent on "totality of the circumstances, including an assessment of both in-court and out-of-court facts"). Our review of this question is de novo. Laycock v. New Mexico, 880 F.2d 1184, 1186 (10th Cir.1989).
 
 
 6
 The pertinent part of the transcript of the 1986 plea hearing consists of the following:
 
 PROCEEDING
 May 8, 1986
 
 7
 "THE COURT: On the record. This is Case Number CRF-86-282, State of Oklahoma versus Kevin McCarley. This matter comes on for District Court arraignment by way of a preliminary information alleging the felony offense, Count I, Knowingly Concealing Stolen Property; Count II, Escape from Lawfuo [sic] custody. The defendant is present in person represented by Mr. Jack Kearney, the State by Fred Morgan.
 
 
 8
 Is this going to be another one of the Department of Corrections cases to pay?
 
 
 9
 MR. KEARNEY: Your Honor, no, this gentleman has never been convicted of anything.
 
 
 10
 THE COURT: What did he escape from?
 
 
 11
 MR. KEARNEY: The arrest?
 
 
 12
 MR. MORGAN: The negotiations are that he is to plead nolo to Count I, 2-year recommendation, ask for a PSI, restitution.
 
 
 13
 MR. KEARNEY: We have no record of any prior convictions, therefore, we're going to ask for a bond reduction.
 
 
 14
 THE COURT: Your name is Kevin McCarley?
 
 
 15
 MR. McCARLEY: Yes, sir, your Honor.
 
 
 16
 THE COURT: You've heard your attorney indicate it's your desire to waive your right to a jury trial and nonjury trial and enter a plea of guilty or enter a plea of nolo contendere to Count I, Knowing [sic] Concealing Stolen Property, and Count [II] Escape from Lawful Custody. You tell me that's what you want to do?
 
 
 17
 MR. McCARLEY: Yes, sir, your Honor.
 
 
 18
 THE COURT: Anyone promise you anything to get you to do this?
 
 
 19
 MR. McCARLEY: No, sir, your Honor.
 
 
 20
 THE COURT: Are you waiving jury and pleading guilty because you are guilty of escape and for no other reason?
 
 
 21
 MR. McCARLEY: Yes, your Honor.
 
 
 22
 THE COURT: Has anyone promised you anything to get you to waive jury and enter a plea of no contest to this Count I of Knowingly Concealing Stolen Property?
 
 
 23
 MR. McCARLEY: No, your Honor.
 
 
 24
 THE COURT: You have any previous record?
 
 
 25
 MR. McCARLEY: No, your Honor.
 
 
 26
 THE COURT: What do you do for a living?
 
 
 27
 MR. McCARLEY: I'm a sheet-rock hanger for a construction company.
 
 
 28
 THE COURT: Who do your [sic] work for?
 
 
 29
 MR. McCARLEY: Right now I work for Bob Goodwin Investment Company.
 
 
 30
 THE COURT: How long has it been since you worked?
 
 
 31
 MR. McCARLEY: Well, just since I was arrested, your Honor.
 
 
 32
 THE COURT: Has anyone promised you anything, Mr. McCarley, to get you to waive jury and plead guilty?
 
 
 33
 MR. McCARLEY: No, sir, your Honor.
 
 
 34
 THE COURT: Are you under the influence of any drugs or medication at this time?
 
 
 35
 MR. McCARLEY: No, sir, your Honor.
 
 
 36
 THE COURT: Are you satisfied with the representation of Mr. Kearney?
 
 
 37
 MR. McCARLEY: Yes, sir, your Honor.
 
 
 38
 THE COURT: The State alleges in Count I that on the 24th day of January of 1986, Mr. McCarley, that you did unlawfully and feloniously, willfully and knowingly conceal from Dave Clauwitter certain personal property of value, to-wit: a Wurlitzer juke box and a set [of] Advent speakers; that prior thereto on the 8th day of January of 1986, been stolen from the said David Clauwitter and that you, knowing or having reasonable cause to believe that the property was stolen that you did then and there unlawfully conceal, withhold said property from the owner thereof with the felonious intent to deprive the owner thereof.
 
 
 39
 Do you tell me you neither admit nor deny that allegation?
 
 
 40
 MR. McCARLEY: I deny that allegation, your Honor.
 
 
 41
 THE COURT: Listen to me, Mr. McCarley. I'm not going to read that over again. Do you tell me you neither admit nor deny that allegation?
 
 
 42
 MR. McCARLEY: I'm sorry, your Honor. Yes, sir.
 
 
 43
 THE COURT: In Count II, the state alleges that you committed the crime of Escape from Lawful Custody. Tell me what happened.
 
 
 44
 MR. McCARLEY: The police officers, they had me spread my hands and put my hands on top of my truck and the police officer dropped the receipt down and I went to bend down and get it. There was a scuffle and I ran.
 
 
 45
 THE COURT: Did you know that was against the law?
 
 
 46
 MR. McCARLEY: Yes, sir, your Honor.
 
 
 47
 MR. KEARNEY: Your Honor, we are requesting a presentence investigation in this matter and with Mr. McCarley presently having a bond set in the amount of $3,500 for the two counts, we're going to ask to reduce that.
 
 
 48
 THE COURT: Is there to be a withholding of a finding of guilt?
 
 
 49
 MR. KEARNEY: Yes, sir.
 
 
 50
 THE COURT: You have any previous criminal record, Mr. McCarley?
 
 
 51
 MR. McCARLEY: No, sir.
 
 
 52
 THE COURT: How long have you lived in Tulsa?
 
 MR. McCARLEY: (no response)
 
 53
 THE COURT: I want to tell you something, Mr. McCarley, I'm--On certain cases if the defendants qualify I'm happy to give them deferred or suspended sentences but I don't give it to people who don't work.
 
 
 54
 MR. McCARLEY: Yes, sir.
 
 
 55
 THE COURT: You understand that?
 
 
 56
 MR. McCARLEY: Yes, sir.
 
 
 57
 THE COURT: Mr. Kearney has told me you want a presentence investigation report.
 
 
 58
 MR. McCARLEY: Yes.
 
 
 59
 THE COURT: And that will give me a history of your background. You tell me that's what you want to do?
 
 
 60
 MR. McCARLEY: Yes, sir, your Honor.
 
 
 61
 THE COURT: All right. Mr. Kearney, you know of any reason I should not accept the defendant's waivers and pleas?
 
 
 62
 MR. KEARNEY: None, your Honor.
 
 
 63
 THE COURT: In Count I, the Court finds the defendant freely and voluntarily waived his right to a jury trial and nonjury trial, freely and voluntarily entered his plea of nolo contendre [sic] or no contest. I will accept the waiver and plea. I'll withhold a finding of guilt at this time and I will set sentencing in this matter on the 27th day of June at 9:30 and in Count II, the Court finds the defendant freely and voluntarily waived his right to jury trial and entered his plea of guilty to the felony offense of Unlawful Escape. I will accept that waiver and plea. I'll withhold a finding of guilt and I'll also set that matter for sentencing on the 27th of June. I'll order the Department of Corrections to prepare a presentence investigation report. What bond has been set for you Mr. McCarley?
 
 
 64
 Petitioner asserts that he consistently maintained his innocence of the property charge. In his presentence report the investigator noted "[t]he defendant adamantly maintains his innocence of Knowingly Concealing Stolen Property." R. Vol. I, tab 10. He urges here that a fair reading of the transcript indicates that he refused to admit guilt and did not understand the implications of a plea of nolo contendere. Thus when the judge asked whether he intended to neither admit nor deny the allegation of guilt on the property charge, petitioner initially answered, "I deny that allegation". R. Vol. I, tab 2. The judge refused to reread the plea to petitioner and asked again if petitioner neither admitted nor denied the allegation. This time, petitioner answered, "I'm sorry, your Honor. Yes sir." Id.
 
 
 65
 The magistrate's Report and Recommendation was adopted by the United States District Court and the guilty plea and the nolo contendere pleas were specifically mentioned. The magistrate found that the record demonstrated that petitioner's pleas were voluntary, and after reviewing the record we agree.
 
 
 66
 As to the "knowingly entered" element, the magistrate's position was that the "Yes sir" quoted at the end of the last paragraph above refers to the judge's statement, after his refusal to again read the charges, "Do you tell me you neither admit nor deny the allegation."
 
 
 67
 The magistrate reported that petitioner did not assert that he did not understand the penalties, but only alleges that he was not advised by the judge of the minimum and maximums. The magistrate's Report at page 7, in part, states:
 
 
 68
 "According to Petitioner, his retained counsel told him that in exchange for guilty pleas to both charges the court would give him probation, but Petitioner told counsel he would not plead guilty to Knowingly Concealing Stolen Property. At the plea hearing, the prosecutor told the Court that negotiations are that he is to plead nolo to Count 1 [knowingly concealing stolen property], 2 year recommendation, ask for a PSI, [and] restitution.' Transcript of proceedings at 3. Thus, it is clear that significant plea negotiations were had which included participation by Petitioner.
 
 
 69
 "Because the critical question is whether petitioner had actual knowledge of his rights, Worthen, supra, 842 F.2d at 1182, it is significant to this Court that Petitioner never alleges that he did not know he had a right to remain silent, that he could confront witnesses, that he would be presumed innocent, that the State had the burden of proving each element of the crimes charged beyond a reasonable doubt, and understood the maximum punishment for each."
 
 
 70
 We are mindful of our recent decision in United States v. Wicks, 995 F.2d 964 (10th Cir.1993), which is strikingly similar to this appeal. In that case Wicks challenged his sentence enhancement imposed pursuant to the Armed Career Criminal Act, 18 U.S.C. 924(e), arguing that his prior convictions were constitutionally infirm. Like the Petitioner in the case before us, Wicks did not allege that he lacked actual knowledge of his rights nor did he intimate that he would have changed his plea if the trial court had made the disputed affirmative showings. Rather Wicks mounted "a purely legal argument based largely on Boykin v. Alabama, 395 U.S. 238 ... that proof of a knowing and voluntary plea depends on a certain waiver litany on the record; and, lack of an affirmative showing of that litany on the record of the prior proceeding raises an irrebuttable presumption that the plea was unconstitutional." Wicks, at 976-77. We held that when collaterally attacking one's convictions, "once the government has established the fact of a prior conviction based on a guilty plea, the defendant has the entire burden of ... [proving] the invalidity of the conviction [by a preponderance of the evidence]." Id. at 978.
 
 
 71
 Based on the record before us, we are convinced that Petitioner has not satisfied the burden as delineated in Wicks. Simply put, Petitioner's mere assertion that he was not informed at the time of his pleas of the maximum and minimum sentences does not by itself establish by a preponderance of the evidence that his pleas were unknowing.
 
 Credit Card Fraud
 
 72
 With regard to his conviction on three counts of uttering a forged instrument, petitioner argues that his conviction subjected him to double jeopardy. We disagree.
 
 
 73
 As discussed above, petitioner entered a jewelry store and used two separate stolen credit cards to purchase three items of jewelry. He signed three separate sales slips with the name John Street. Petitioner was charged with three counts under Okla. Stat. tit. 21, 1592. Section 1592 states:
 
 
 74
 Any person who, with intent to defraud, utters or publishes as true any forged, altered or counterfeited instrument or any counterfeit gold or silver coin, the forging, altering or counterfeiting of which is hereinbefore declared to be punishable, knowing such instrument or coin to be forged, altered or counterfeited, is guilty of forgery in the second degree.
 
 
 75
 Petitioner argues that because the three purchases were made in one store in the space of twenty minutes, his conduct was one transaction justifying only one count under the statute.
 
 
 76
 The right to be free from double jeopardy includes protection "against multiple punishments for the same offense.' " Mansfield v. Champion, 992 F.2d 1098, 1100 (10th Cir.1993)(quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969)). Petitioner argues that his actions constitute only one offense, for which he has received three punishments.
 
 
 77
 "In a habeas corpus proceeding under section 2254, a federal court should defer to a state court's interpretation of state law in determining whether an incident constitutes one or more than one offense for double jeopardy purposes." Id. A defendant is subjected to double jeopardy, under these circumstances, only if a sentencing court metes out a "greater punishment than the legislature intended." United States v. Hollis, 971 F.2d 1441, 1450 (10th Cir.1992), cert. denied, 113 S.Ct. 1580 (1993). To determine legislative intent, we first look to the language of the statute and to legislative history. Id. Here, the statute refers to a forged instrument, in the singular, implying that when more than one instrument is forged, there is more than one offense. Thus, because petitioner signed three separate sales receipts, he uttered three forged instruments.
 
 
 78
 Not content to rely on this slender reed, however, "[i]f Congressional intent cannot be discerned, we apply the well-settled "rule of statutory construction" set forth in Blockburger v. United States, 284 U.S. 299 (1932).' " Id. (quoting United States v. Morehead, 959 F.2d 1489, 1506 (10th Cir.1992)). Blockburger counsels that:
 
 
 79
 [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of [an additional] fact which the other does not.
 
 
 80
 Blockburger, 284 U.S. at 304. Under this analysis, charging petitioner with three counts under section 1592 does not implicate double jeopardy concerns because the state had to prove separate facts for each offense.
 
 
 81
 To maintain a prosecution under section 1592, "the State must prove that the defendant offered for acceptance a forged instrument with intent to defraud...." Johnson v. State, 564 P.2d 664, 666 (Okla.Crim.App.1977). The term "utter," as used in this statute, "means to offer, whether accepted or not, a forged instrument, with the representation, by words or action, that the same is genuine.' " Fields v. State, 515 P.2d 1402, 1403 (Okla.Crim.App.1973) (quoting Hill v. State, 266 P.2d 979, 981 (Okla.Crim.App.1954) (syllabus by the court).
 
 
 82
 In order to convict petitioner on three counts under this statute, the state had to present evidence of three separate forged instruments. This the state did, introducing the three separate sales slips, all bearing different transactional data, and all with different invoice numbers. Thus, proof of forgery of each slip involved proof of facts particular to that slip and different from the other slips.
 
 
 83
 In construing a similar statute dealing with check fraud, the Utah Supreme Court has held "[t]he statute makes it unlawful to draw, utter, or deliver any worthless check with intent to defraud. It is thus unlawful and a crime to utter each check." State v. Dolan, 502 P.2d 549, 551 (Utah 1972). Finally, we note that in Gilhooly v. State, 625 P.2d 1274, 1275 (Okla.Crim.App.1981), the defendant presented two forged checks to the same bank on the same day and was charged with two counts under section 1592. No double jeopardy problem was identified.[2] Because we conclude that section 1592 allows imposition of separate, and potentially consecutive, sentences for each separate violation of the statute, we reject petitioner's double jeopardy claim and affirm without addressing his lenity argument. Cf. United States v. Dennison, 730 F.2d 1086, 1088 (7th Cir.), cert. denied, 469 U.S. 916 (1984).[3]
 
 
 84
 With regard to his credit card conviction, petitioner also argues that he received ineffective assistance of counsel both at trial and on appeal. In order to prevail on this claim, petitioner must (1) show that counsel's performance was deficient and (2) demonstrate that such inadequacies prejudiced his defense. See Strickland v. Washington, 466 U.S. 668, 693 (1984). Some claims of this type can be resolved solely by examining the record. Moore v. United States, 950 F.2d 656, 660 (10th Cir.1991).
 
 
 85
 Petitioner argues that both his trial counsel and his counsel on appeal failed to raise the double jeopardy issue. Because we have concluded that there is no merit to that issue, petitioner was not prejudiced by counsels' failure to argue it. Petitioner also claims that counsel should have investigated his case more thoroughly. Petitioner's arguments in this regard are either contradicted by the record or are mere speculation as to what additional investigation might have produced. Petitioner identifies no additional facts which would have been unearthed upon further investigation which would have rebutted the strong case presented against him at trial by the State. We affirm the district court's conclusion that petitioner did not suffer from ineffective assistance of trial or appellate counsel on the credit card charges.
 
 
 86
 AFFIRMED.
 
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 As analogous support, we note that the Fifth Circuit, in a case brought under 15 U.S.C. 1644(a)(the Truth in Lending Act), stated that "each of [defendant's] three uses of the Visa card constituted a separate transaction affecting interstate ... commerce.' " United States v. Abod, 770 F.2d 1293, 1296 (5th Cir.1985)
 
 
 [3]
 Because petitioner's conduct amounted to more than one offense, there is no merit to his argument based on multiplicity of the indictment. See United States v. De La Torre, 634 F.2d 792, 794 (5th Cir.1981)("Multiplicity is the charging of a single offense in more than one count.")