

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-30-1994

# United States v. Turcks

Precedential or Non-Precedential:

Docket 93-1322

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

## Recommended Citation

"United States v. Turcks" (1994). *1994 Decisions.* Paper 204.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/204

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

----------

No. 93-1322

----------

UNITED STATES OF AMERICA

v.

ARTHUR TURCKS,

Appellant

----------

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 92-00297-01)

----------

Argued Friday, September 23, 1994

BEFORE: BECKER, COWEN and GARTH, Circuit Judges

----------

(Opinion filed November 30, 1994)

----------

Peter Goldberger (Argued)
Law Office of Peter Goldberger
50 Rittenhouse Place
Ardmore, Pennsylvania 19003-2276

Attorney for Appellant


Tammy E. Avery (Argued)
Office of United States Attorney
615 Chestnut Street
Philadelphia, Pennsylvania 19106

----------

OPINION OF THE COURT

----------

GARTH, Circuit Judge:

Defendant Arthur Turcks was convicted on each count of a nineteen-count indictment, charging conspiracy, credit card fraud and bank fraud. On appeal, Turcks contests the jury instructions, the failure to merge the nine counts of "access device" fraud, 18 U.S.C. § 1029(a)(2), into one offense, and the district court's restitution order.

We have jurisdiction pursuant to 28 U.S.C. § 1291. Because Turcks did not object to any of the district court's rulings, we review for "plain error".[1] Although we find no "plain error" in the jury instructions or with respect to the multiplicity of counts, the restitution ordered by the district court was not supported by the necessary fact-finding as required by United States v. Copple, 24 F.3d 535 (3d Cir.), cert. denied, 1994 WL 466503 (Nov. 7, 1994). Hence we affirm the district court's rulings in all matters other than its restitution order. As to the portion of the district court's sentence affecting restitution, we reverse and remand for appropriate fact-finding and a redetermination of the restitution order.

---

[1]. Counsel on appeal was not trial counsel.

Arthur Turcks and co-defendant Earl Warfield were co-owners of the Lansdowne Video Store in Philadelphia, Pennsylvania. On May 27, 1992, a federal grand jury returned a nineteen count indictment against Turcks and Warfield.[2]

Count One charged Turcks and Warfield with conspiring to commit credit card fraud in violation of 18 U.S.C. § 1029(b)(2).[3] Counts Two through Ten charged Turcks with access device fraud in violation of 18 U.S.C. § 1029(a)(2).[4] Counts Eleven through Nineteen charged Turcks with bank fraud in violation of 18 U.S.C. § 1344.[5] These charges all arose from the use of lost or stolen

---

[2]. Warfield was also convicted of nineteen counts of access device fraud but did not appeal. Opinion of the District Court, Nov. 20, 1992, p. 1.

[3]. Section 1029(b)(2) provides as follows:

Whoever is a party to a conspiracy of two or more persons to commit an offense under subsection (a) of this section, if any of the parties engages in any conduct in furtherance of such offense, shall be fined an amount not greater than the amount provided as the maximum fine for such offender under subsection (c) of this section or imprisoned not longer than one-half the period provided as the maximum imprisonment for such offense under subsection (c) of this section, or both.

[4]. Section 1029 provides as follows:

(a) Whoever--

(2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period; . . .

shall, if the offense affects foreign or interstate commerce, be punished as provided in subsection (c) of this section.

[5]. Section 1344 provides as follows:

credit cards to consummate fraudulent retail sales between February 1989 and February 1990.

At trial, the government adduced evidence that, in the operation of the Lansdowne Video store, lost or stolen credit cards were fraudulently used to complete purported retail sales. In the thirteen months prior to January 1989, Lansdowne Video had recorded $6,394.00 in credit card sales. In the thirteen months following January 1989, Lansdowne Video recorded $97,794.08 in credit card sales. Only Turcks and Warfield had access to the store's credit card processing machines and at least one of them was present whenever the store was open.

A handwriting expert testified, using handwriting exemplars, that Turcks had probably signed four of the invalid credit card sales slips which were charged to four separate credit card accounts. The government had placed in evidence the fraudulent credit card slips and the handwriting exemplars from both defendants.

(..continued)

>   Whoever knowingly executes, or attempts to execute, a scheme or artifice--
>
>>   (1) to defraud a financial institution; or
>>
>>   (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises;
>
> shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

When defendants opened their credit card merchant account, they agreed to process each customer's card through an authorization device and to comply with any instructions or authorizations received. Bank records demonstrated that numerous transactions initiated at Lansdowne Video were rejected with instructions to call the bank but no calls were ever made. Indeed, in many instances, cards were "worked" or processed seeking lesser and lesser amounts in an attempt to obtain an authorization despite prior denials.

The credit slips derived from these fraudulent transactions were deposited in Lansdowne's merchant banking account at Mellon Bank. Turcks signed many of the deposit slips which reflected the deposit of fraudulent credit slips.

By means of these fraudulent procedures, Lansdowne Video generated $102,137.99 in illegal credit card transactions. Apparently however some of the credit card transactions were never processed to completion. This circumstance may have given rise to the probation department's subsequent reduction in the calculation of the loss.

At the close of the trial, the district court, without objection, charged the jury on the substantive counts of the indictment as follows:

> A person may be guilty of a crime on one or more of three different bases. First, a person is guilty if the person himself or herself committed the crime, that is actually perpetrated the crime. Second, a person is guilty as a co-conspirator if the person was a member of the conspiracy when the crime was committed, and if it was committed in furtherance of or as a foreseeable consequence of the conspiracy. Third, a person is guilty of a crime committed by someone else if the

person aids and abets the commission of the crime. . . .

If any one or more of these three bases is shown by the evidence beyond a reasonable doubt, that is that the person was the actual perpetrator of the crime, that the person was responsible as a co-conspirator, or that the person was an aider or abetter, the person may be found guilty of the crime charged.

App. 46a-47a. The jury convicted Turcks on all nineteen counts in a general verdict.

At a March 4, 1993 hearing, the district court sentenced Turcks to twenty-five months imprisonment from a range of twenty-one to twenty-seven months, followed by three years supervised release. Despite indications that Turcks was insolvent, the district court, without determining the extent of his financial ability to pay or his future needs, ordered Turcks to pay $102,137.99 in restitution to the defrauded banks. The $102,137.99 figure was derived from the presentence report. The district court did not make findings reflecting the basis for this amount, or to whom the monies should be paid, or the relationship between the restitution imposed and the loss caused by Turcks' conduct. The district court also ordered Turcks to pay $950 in Special Assessments.

Despite the district court's oral sentence, the judgment that was entered thereafter ordered Turcks to pay only $85,835.99 to twenty-one named banks and attributed the entire amount of the restitution order to Count Two. The $16,298 difference between the amount initially ordered by the district court and the amount

recorded in the written judgment apparently resulted from later calculations made by the probation department.

Turcks filed an untimely appeal, but sought and received an order finding excusable neglect under Federal Rule of Appellate Procedure 4(b).


II

Turcks challenges the jury instructions given by the district court.  He contends that the district court erroneously charged the elements of co-conspirator liability under Pinkerton v. United States, 328 U.S. 640 (1946), and that, as a result, the jury convicted him improperly.


A.

Because Turcks did not object to the challenged instruction, we will reverse only if we find "plain error."  Fed. R. Crim. P. Rule 52(b)[6]; United States v. Retos, 25 F.3d 1220, 1228 (3d Cir. 1994).  The Supreme Court has stated that, "[i]t is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court."  Henderson v. Kibbe, 431 U.S. 145, 154 (1977).

> For "plain error" to exist:
> There must be an "error" that is "plain" and that "affect[s] substantial rights."  Moreover, Rule 52(b)

---

[6].  Rule 52(b) reads as follows:

> **Plain Error.**  Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

> leaves the decision to correct the forfeited error within the sound discretion of the Court of Appeals, and the court should not exercise that discretion unless the error "seriously affect[s] the fairness , integrity or public reputation of the judicial proceedings."

United States v. Olano, __ U.S. __, __, 113 S. Ct. 1770, 1776 (1993) (quoting United States v. Young, 470 U.S. 1, 15 (1985)).

A deviation from a legal rule is error. Olano, 113 S. Ct. at 1777. A "plain" error is "clear" or "obvious." Id. In most cases, an error will be deemed to have "affected substantial rights" where it is prejudicial. Prejudicial error, affecting substantial rights, must have "affected the outcome of the District Court proceedings." Id. at 1778.

When these elements are met, "the Court of Appeals has authority to order correction, but is not required to do so." Id. We will exercise our discretion "where the defendant is actually innocent, or where, regardless of the defendant's innocence or guilt, the error `seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Retos, 25 F.3d 1220, 1229 (quoting Olano, 113 S. Ct. at 1779).

B.

The government concedes that the district court's instruction was erroneous and obvious. Under Pinkerton v. United States, 328 U.S. 640 (1946), and pursuant to our jurisprudence, a jury must find that a party to the conspiracy committed a crime both "in furtherance of" and "as a foreseeable consequence of"

the conspiracy to find a co-conspirator guilty of a substantive offense committed by a co-conspirator.  Id. at 646; United States v. Gonzales, 918 F.2d 1129, 1135-36 (3d Cir. 1990), cert. denied, 111 S. Ct. 1637 (1991).  Thus, the district court should have charged the jury in the conjunctive rather than the disjunctive, using "and" instead of "or" in its instruction.  As noted earlier, the district court charged "a person is guilty as a co-conspirator for the crimes committed by another co-conspirator if the person was a member of the conspiracy when the crime was committed, and it was committed in furtherance of or as a foreseeable consequence of the conspiracy."  App. 46a (emphasis added).  By charging in the disjunctive, the district court clearly erred.  Therefore, the first two elements of "plain error" are met.  We turn then to the third element of the "plain error" analysis -- prejudice.

We conclude that Turcks was not prejudiced by this error.  Prejudice results if the error "affected the outcome of the District Court proceedings."  Olano, 113 S. Ct. at 1778.  The inquiry concerning prejudice on "plain error" review is similar to our inquiry into harmless error with the important difference that the defendant, rather than the government, bears the burden of persuasion in a "plain error" analysis.  Id.

In harmless error analysis, where the burden rests on the government, we reverse unless the government can show "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  Chapman v. California, 386 U.S. 18, 24 (1967).  "To say that an error did not contribute to the verdict

is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question as revealed in the record." Yates v. Evatt, -- U.S. --, --, 111 S. Ct. 1884, 1893 (1991). "The inquiry . . . is not whether, in a trial that occurred without error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." Sullivan v. Louisiana, -- U.S. --, --, 113 S. Ct. 2078, 2081 (1993) (emphasis in original).

Because the burden of establishing prejudice is a burden that Turcks bears, we will reverse only if Turcks can show that the erroneous charge actually affected the jury's verdict in his case. See United States v. Retos, 25 F.3d at 1232. To meet his burden, Turcks argues that the jury could have considered the evidence implicating him in the conspiracy and found him guilty of conspiracy. Turcks then contends that the jury could have proceeded to analyze his guilt on the substantive offenses based on the district court's erroneous instruction that permitted his conviction on proof of either "furtherance" or "foreseeability" but not both. Turcks cites Griffin v. United States, 502 U.S. --, 112 S. Ct. 466 (1991), for the proposition that the possibility that the jury rested its general verdict on the one improper theory among multiple proper theories requires reversal.

In Griffin, however, reversal was sought because the evidence did not support one of the two theories presented to the jury in the charge. Id. at 468. The Court rejected Griffin's assertion that where the jury is given two alternative grounds

for conviction and the evidence is insufficient to support one ground, the error cannot be harmless. Id. at 474. In doing so, however, the Court continued to acknowledge the principle that an error in defining the law that applies to one of multiple theories (the "impossible to tell" concept), as distinct from a challenge based on insufficient evidence, requires reversal of a general verdict conviction. Id. at 470-71, 474; see also Yates v. United States, 354 U.S. 298 (1957).

Neither Yates nor Griffin, however, were premised on a "plain error" analysis--the analysis we must employ on this appeal. Under "plain error," the burden that the defendant must meet to satisfy the "prejudice" requirement is to show that the outcome of his trial was actually affected. Olano, 113 S. Ct. at 1778.

The Seventh Circuit recently discussed the relationship between harmless error and "plain error" in the context of jury instructions in United States v. McKinney, 954 F.2d 471 (7th Cir.), cert. denied, 113 S. Ct. 662 (1992). At McKinney's trial for conspiracy, the court instructed the jury that any one of four possible overt acts could justify a conviction for conspiracy. One of the instructed acts was not a proper ground for a conspiracy conviction. Id. at 474-75. While the court recognized that instructing on the improper ground was not "harmless error," it also concluded that it was not "plain error" because McKinney was unable to show that the jury convicted him based on the improperly instructed element:

> Where an alleged error is deemed to violate the Constitution (as in this case), an error is harmless only if the appellate court can find that it was harmless beyond a reasonable doubt . . . . Moreover, the government must demonstrate that the error was harmless; a defendant need not affirmatively show harm. Plain error, on the other hand, is an error so grievous that it caused an actual miscarriage of justice, which implies that the defendant probably would not have been convicted absent the error.

Id. at 475-76 (citations omitted). The court held, "it is not probable that the jury convicted McKinney solely on the basis of the fourth [improper] alleged overt act. Thus, submitting that act to the jury was not plain error." Id. at 477.

Turcks has not shown us that the jury likely convicted him of access device fraud on the basis of the erroneous Pinkerton charge. The jury heard the Pinkerton charge only once. It did not have a copy of the charge in the jury room. The government did not discuss Pinkerton liability in its summation. Nor did Turcks' counsel, in his summation, discuss co-conspirator liability. Moreover, as we have related earlier, the error giving rise to this issue on appeal stemmed from the unfortunate use of one word: "or" instead of "and," in a lengthy, otherwise unassailable, charge. There is little question in our minds but that if counsel had called the district court's attention to what we perceive as no more than an inadvertent mistake, the district court would have promptly cured its error.

Further, the weight of the evidence presented at trial established that Turcks committed the offenses charged and that he aided and abetted Warfield's illegal use of the credit cards. Only Turcks and Warfield were trained and authorized to accept

credit cards.  The fraudulent credit slips bore two different styles of handwriting.  Through the use of handwriting exemplars, a government expert testified that Turcks had probably forged the signatures of four cardholders.  The jury was then given the exemplars to compare with the forged credit slips.  In addition, the record reveals that Turcks was present in the video store when lost or stolen credit cards were processed and that Turcks prepared and signed bank merchant deposits by which Lansdowne Video received credit for the fraudulent charges.

We are satisfied that the government produced ample evidence that Turcks was intimately involved in the fraudulent scheme.  In light of this record, we conclude that it is highly unlikely that the jury convicted Turcks of the substantive offenses solely on the basis of the erroneous Pinkerton charge.  Because we conclude that Turcks cannot show that the charge, in the manner given, affected Turcks' conviction on the substantive charges, we may not consider whether to exercise our discretion.  We therefore hold that the erroneous instruction did not constitute "plain error."

III

Turcks next argues that the nine counts of credit card fraud under 18 U.S.C. § 1029(a)(2) merge into one count under the statute. He did not raise this objection in the district court and so we again review for "plain error." We reject Turcks' argument.

Turcks' argument is based on the language of 18 U.S.C. § 1029(a)(2) which reads as follows:

(a) Whoever--

(2) knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period;

shall if the offense affects interstate or foreign commerce, be punished as provided in subsection (c) of this section.

Turcks contends that because the statute applies to the use of "one or more unauthorized devices . . . aggregating $1,000 or more" during a one-year period, the government may only convict him of one offense no matter how many credit cards or how much "value" over $1,000 was obtained by him. He argues, in the alternative, that either the statutory language plainly permits only one conviction or that the rule of lenity requires that we construe the statute in his favor to permit only one conviction.[7]

---

[7]. Turcks claims in his brief on appeal that all of the illegal uses of the credit cards constitute a single aggravated offense and therefore Counts Two through Ten should have merged for purposes of sentencing. He claims that the sentences imposed on Counts Three through Ten should be vacated and the separate Special Assessments on those Counts abated (Brief of Appellant p. 13). At oral argument, Turcks' counsel acknowledged that pursuant to the Sentencing Guidelines, Turcks' sentence on the

When read in the context of its legislative history, we hold that the statute permits multiple prosecutions whenever the defendant's course of conduct exceeds the relevant jurisdictional minima. Section 1029's predecessor was the Truth in Lending Act, 15 U.S.C. § 1644(a).[8] H. Rep. No. 98-894, 98 Cong., 2d Sess. 5, reprinted in 1984 U. S. Code Cong. & Admin. News 3691. Prior to the enactment of § 1029, § 1644 was the principal federal statute used to prosecute credit card fraud. A reading of the two statutes demonstrates their similarity. Section 1644 punishes:

> Whoever knowingly . . . uses . . . any . . . fraudulently obtained credit card to obtain . . . anything else of value which within any one-year period has a value aggregating $1,000 or more.

Section 1029(a)(2) punishes:

> Whoever knowingly and with intent to defraud . . . uses one or more unauthorized access devices during any one-year period, and . . . obtains anything of value aggregating $1,000 or more.

(..continued)
substantive counts would have been the same had the counts merged because the Guidelines compute the sentence based on the total monies lost not on the total number of counts charged. See U.S.S.G. § 2F1.1. We therefore understand that the only additional penalties imposed on Turcks as a result of Turcks having been charged with nine counts were the eight additional Special Assessments of fifty dollars for each additional count.

[8]. 15 U.S.C. § 1644(a) provides as follows:

> Whoever knowingly in a transaction affecting interstate or foreign commerce, uses or attempts or conspires to use any counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained credit card to obtain money, goods, services, or anything else of value which within any one-year period has a value aggregating $1,000 or more . . . . shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

With the exception of the phrase "one or more unauthorized access devices" found in § 1029(a)(2), the statutes are virtually identical.[9]  Hence, judicial interpretation of the Truth in Lending Act (§ 1644) provides instruction for the interpretation of the access device fraud act (§ 1029) with which we are concerned here.

As we read the legislative history regarding the progression from the Truth in Lending Act to the access device fraud act and as we understand the cases decided under the Truth in Lending Act,[10] it is evident that Congress intended by the passage of § 1029 to combat a dramatic increase in credit card fraud.  S. Rep. No. 98-368, 98th Cong., 2d Sess. 2 & H. Rep. No. 98-894, 98th Cong., 2d Sess. 5, reprinted in 1984 U.S. Code Cong. &

---

[9].  In one Congressional committee report, the committee noted that the $1,000 or more requirement "conforms with the threshold for certain offenses under the Truth in Lending Act."  H. Rep. 98-984, 98th Cong., 2d Sess. 17, reprinted in 1984 U. S. Code Cong. & Admin. News 3703.

[10].  Those courts which have interpreted the Truth in Lending Act (§ 1644) have interpreted the term "$1,000 or more" and the term "one year period," which appear in both § 1644 and § 1029, to permit more than one conviction each time the defendant's fraudulent conduct resulted in a gain which equaled or exceeded $1,000 in a one year period.  United States v. Abod, 770 F.2d 1293, 1296-97 (5th Cir. 1985) (rejecting defendant's argument that he could not be convicted of three counts for using the same card to obtain over $3,000 in value); United States v. Mikelberg, 517 F.2d 246, 252 (5th Cir. 1975) (rejecting defendant's contention that the government could not aggregate multiple transactions to meet the jurisdictional requirement), cert. denied, 424 U.S. 909 (1976); see also United States v. Helgesen, 669 F.2d 69 (2d Cir. 1982) (accepting multiple convictions without discussion), cert. denied, 456 U.S. 929 (1982).  These cases which interpret the term "$1,000 or more" in § 1644 to permit multiple convictions are thus instructive of the proper interpretation of the term "one or more" in § 1029(a)(2).

Admin. News 3648, 3691–92.  In particular, Congress added the phrase "one or more unauthorized access devices" in § 1029(a)(2) to close a loophole that appeared in § 1644.  The Truth in Lending Act (§ 1644) had required that $1,000 fraudulently be obtained by the use of each individual card.  Thus, the Act was not violated if ten individual cards were used to defraud each true owner of $900 per card, even though the total thus acquired by the defrauder was $9,000, an amount which exceeded the $1,000 threshold.

The legislative history of § 1029 reveals that criminal syndicates were therefore using unauthorized credit cards to charge just up to, but not beyond, the jurisdictional amount. Id.  By inserting the "one or more" language in § 1029, Congress enabled the federal government to prosecute these crime rings. Id at 3691.  Although the specific legislative action enabled prosecutors to aggregated unauthorized uses, we glean no indication from the legislative history that Congress intended that the "one or more" language used in § 1029 limit the government's ability to charge violators with more than one count.  Indeed, the insertion of the "one or more" language evidences Congress' intent to buttress enforcement of § 1029, an intent that would be betrayed by a reading that allowed charging on only one count in any one-year period.

We are not persuaded by Turcks that a major offender who uses hundreds of stolen credit cards to obtain millions of dollars may be charged with only one count of violating § 1029(a)(2), yet that is the conclusion we would have to draw

from Turcks' interpretation and reading of § 1029(a)(2).  In holding otherwise, we join those courts which have earlier considered this question and held, as we hold now, that separate violations of § 1029 whereby $1,000 or more is acquired in a one-year period, using one or more credit cards, may be charged in multiple counts.  United States v. Iredia, 866 F.2d 114, 120 (5th Cir.), cert. denied, 492 U.S. 921 (1989); United States v. Newman, 701 F. Supp. 184, 186-87 (D. Nev. 1988); see also United States v. Powell, 973 F.2d 885 (10th Cir. 1992) (affirming a multiple count conviction without comment), cert. denied, 113 S. Ct. 1598 (1993); United States v. Ryan, 894 F.2d 355 (10th Cir. 1990) (same).  This conclusion is consistent with the Congressional purpose in enacting § 1029.

Finally, we observe that our holding does not run afoul of the rule of lenity.  The rule of lenity "demands resolution of ambiguities in criminal statutes in favor of the defendant." Hughey v. United States, 495 U.S. 411, 422 (1990).  It operates "only after it is determined that a criminal statute is ambiguous, not at the beginning of the process of construction, 'as an overriding consideration of being lenient to wrongdoers.'" United States v. Rodriguez, 961 F.2d 1089, 1093-94 (3d Cir. 1992) (quoting Chapman v. United States, 500 U.S. 453, 463 (1991)).  It "is not to be applied where to do so would conflict with the implied or expressed intent of Congress." Liparota v. United States, 471 U.S. 419, 427 (1985).  If we were to adopt Turcks' reading of § 1029, our holding would conflict with Congress' intent.  Thus, the rule has no application here.

IV

Turcks finally contends that the district court failed to make the requisite factual findings to justify the restitution order. While we review for "plain error" because Turcks did not object, we will reverse and remand for resentencing because the district court failed to comply with our express statement that such findings are essential for our review, thus prejudicing Turcks. Indeed, the government has conceded that resentencing must take place.[11]

The district court ordered restitution pursuant to the Victim and Witness Protection Act, 18 U.S.C. § 3663-64, which provides in § 3664:

> The court, in determining whether to order restitution under section 3663 of this title and the amount of such restitution, <u>shall</u> consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

18 U.S.C. § 3664(a) (emphasis added). Consistent with the statute's mandate, we require that district courts make particular factual findings prior to ordering restitution. <u>United States v. Copple</u>, 24 F.3d 535, 549 (3d Cir.), <u>cert.</u>

---

[11]. The government's brief recites, "The district court incorrectly imposed an order of restitution upon Turcks without making a finding on ability to pay and the case should be remanded for resentencing. The government agrees with Turcks that this case should be remanded for the district court to make findings on Turcks' ability to pay the restitution." (Brief of the Appellee p. 16).

denied, 1994 WL 466503 (Nov. 7, 1994); United States v. Logar,

975 F.2d 958, 961 (3d Cir. 1992); United States v. Palma, 760

F.2d 475, 480 (3d Cir. 1985). Specifically, the district court

must make factual findings based on the record of:
> 1) the amount of loss, 2) the defendant's ability to
> pay and the financial need of the defendant and the
> defendant's dependents, and 3) the relationship between
> the restitution imposed and the loss caused by the
> defendant's conduct. We also [hold] that,
> notwithstanding estimates of loss in a presentence
> report, the district court judge must point to the
> evidence in the record supporting the calculation of
> loss to the victims.

Copple, 24 F.3d at 549-50 (citing Logar, 975 F.2d at 961-62).

At the sentencing hearing, the district court orally ordered

Turcks to pay $102,137.99. No findings were made. Among other

things, the district court failed to find to whom the payments

should be made, and in what amount, and failed to make any

finding regarding Turcks' ability to pay. These omissions amount

to clear error.

Turcks also contends, citing United States v. Hughey, 495

U.S. 411 (1990), that the district court erred by assigning all

of the restitution he was ordered to pay to Count Two despite the

fact that the total amount that Turcks obtained through use of

the credit cards was the subject of nineteen convictions. Hughey

involved a defendant who pled guilty only to Count Four of a six

count indictment but was ordered to pay restitution for losses

that resulted from relevant conduct as to which he did not plead

guilty. Id. at 413-14. The Supreme Court held that Hughey could

only be ordered to pay restitution for the conduct charged in Count Four.  Id. at 422.[12]

The jury convicted Turcks on all nineteen counts in the indictment.  He has not alleged that the restitution award was derived from conduct that was not charged in a count in the indictment.  Accordingly, Hughey does not apply to Turcks' situation.

With regard to the restitution award, Turcks has met his burden of showing prejudice.  After the sentencing hearing, the $102,137.99 restitution figure, which the district court announced orally at sentencing, was reduced to $85,835.99 in the subsequently entered written judgment based on further calculations by the probation department.  Turcks has called our attention to the district court's uncertainty as to his ability to pay.  The district court ordered Turcks to pay the restitution award starting immediately (Turcks was sentenced on March 4, 1993) but stated that he need only pay the $950 in Special

---

[12]. Since Hughey was filed, Congress enacted legislation addressing the rule of Hughey.  That legislation has no relevance here where Turcks' did not plead guilty but was convicted on all counts of the indictment.  Pub. L. No. 101-647, tit. XXV § 2509, tit. XXXV § 3595 (1990).  One amendment to 18 U.S.C. § 3663 permits a court to order restitution for conduct to which the defendant did not plead guilty "to the extent agreed to by the parties in a plea agreement."  18 U.S.C. § 3663(a)(3); see United States v. Jewett, 978 F.2d 248, 253 (6th Cir. 1992).  The second amendment defines "victim" under crimes involving a pattern of criminal activity as "any person directly harmed by the defendant's criminal conduct in the course of the scheme."  18 U.S.C. § 3663(a)(2); see Jewett, 978 F.2d at 252.  As we later hold in text, because the jury convicted Turcks of every offense with which the government charged him, neither Hughey nor the recent legislative amendments are applicable here.

Assessments "as soon as Mr. Turcks can do so." App. 70a. This circumstance, the discrepancy in the restitution ordered, and the failure to make other required factual findings cause us to conclude that Turcks' sentence was prejudicially affected by the district court's restitution order.

We are vested with discretion in concluding that "plain error" occurred. Olano, 113 S. Ct. at 1778. Here it is evident that the district court's failure to comply with our requirements of fact-finding seriously affected Turcks' sentence in as far as the restitution order is concerned. It may be that on remand, when the district court makes the findings that are mandated by our precedents, the district court may determine that the same restitution heretofore imposed on Turcks should be reimposed, providing that the facts found support such an order. On the other hand, the findings which the district court makes may lead to a different restitution order. It will be for the district court to resentence in its discretion based on the findings which it makes. In this respect, the district court may desire to take additional testimony or it may, it if deems the record sufficient, make such findings from the record as it now exists.

V

Thus, we affirm Turcks' conviction on the nineteen counts in the indictment.  We will reverse and remand for a redetermination of the restitution order in a manner consistent with this opinion.