

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-26-2007

# USA v. Lutz

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4745

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

## Recommended Citation

"USA v. Lutz" (2007). *2007 Decisions.* Paper 700.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/700

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No.  05-4745
_____

UNITED STATES OF AMERICA

v.

ANGELO LUTZ,

Appellant

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 99-cr-00363-10)
District Judge: Honorable R. Barclay Surrick

_____

Submitted Under Third Circuit LAR 34.1(a)
July 13, 2007

Before: RENDELL, AMBRO, and NYGAARD, <u>Circuit Judges</u>

(Opinion filed July 26, 2007)

_____

OPINION
_____

AMBRO, <u>Circuit Judge</u>.

This is the second time Angelo Lutz has appealed his sentence after having been

convicted, *inter alia*, on Racketeer Influenced and Corrupt Organization ("RICO")

charges relating to his involvement in organized crime activities. We will not get into the extensive procedural and factual background of this case here, as we write only for the parties and, in any event, it is recounted in an earlier decision in this matter. *See United States v. Merlino*, 349 F.3d 144 (3d Cir. 2003).

Stated broadly, in his first appeal Lutz challenged the District Court's calculation of the amount of monetary loss to victims caused by the conspiracy that was properly attributable to him. Initially, the District Court had attributed to Lutz the entire loss charged to the conspiracy ($300,500), going back to its inception in 1992. Pursuant to the Sentencing Guidelines, this resulted in a three-level enhancement to Lutz's base offense level. On appeal, we vacated the District Court's decision in that regard, holding that the record did not support Lutz's involvement in the conspiracy at such an early stage. *See id.* at 157–59. On remand, the District Court determined that the record supported a conclusion that Lutz was involved in the conspiracy beginning in December of 1996, and attributed to him the loss, amounting to $159,500, associated with both his direct involvement and that associated with other members of the conspiracy with whom he most closely worked. This amount called for a two-level upward adjustment to the Guidelines base-offense level. Lutz again appeals; this time we affirm.[1]

In *United States v. Collado*, 975 F.2d 985 (3d Cir. 1992), we explained the scope of co-conspirator liability as it relates to the Guidelines calculation of loss amounts

---

[1]The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

attributable to a particular defendant. Though the scope of accomplice liability as it relates to criminal convictions can be quite broad, *see United States v. Turcks*, 41 F.3d 893, 897 (3d Cir. 1994), the Guidelines require a more nuanced approach. For Guidelines purposes, a defendant is liable for those acts of co-conspirators taken "'in furtherance of the . . . jointly-undertaken . . . activity,' were 'within the scope of the defendant's agreement,' and were 'reasonably foreseeable in connection with the criminal activity the defendant agreed to undertake.'" *Collado*, 975 F.2d at 995 (quoting U.S.S.G. § 1B1.3). Put another way, the Guidelines are concerned with the scope of a defendant's agreed-upon involvement in a given conspiracy, not the scope of the conspiracy itself.

In this case the Government argued—and the District Court found—that Lutz was responsible for the losses that he personally caused as well as those undertaken by others in the conspiracy with whom he regularly associated and closely worked. Taking into account our earlier decision that Lutz was not responsible for losses as early as 1992, the Court began its loss calculation with the first racketeering act charged against Lutz that was found "proven" by the jury (in December of 1996). Lutz, on the other hand, asserted that only those extortions in which he was personally involved should figure into his Guidelines loss calculation. We agree with the District Court.

As an initial matter, *Collado* instructs that the loss amount attributable to Lutz is *not* necessarily limited only to his own acts. What matters is what losses were reasonably foreseeable as a result of Lutz's specific agreement with his co-conspirators, even if he did not personally cause those losses. The conspiracy that Lutz agreed to join—and it is

3

evident from the jury verdict that he did so agree—was the wide-ranging, systematic extortion of bookmakers in the Philadelphia area.

The facts here are analogous to those in *United States v. Duliga*, 204 F.3d 97 (3d Cir. 2000), in which the defendant joined a fraudulent telemarketing scam. In holding him responsible for the fraud loss caused by the other co-conspirators, we noted that the defendant knew of the fraudulent nature of the activity, that he employed the same techniques as his co-conspirators, and that he worked in close proximity with them such that he certainly knew the scope of their scamming activities. *Id.* at 101. Similarly here. Regardless whether Lutz personally participated in each individual act of extortion, when he joined the organized crime conspiracy he certainly knew of its illegal purpose at the outset. In addition, conspiracy members all employed the same techniques, often following up on unfinished "business" begun by another. And most significantly from the standpoint of loss calculation, each co-conspirator helped to arrange the lucrative "Christmas shakes," in which local bookmakers were forced to pay substantial sums under threat of violence each year at Christmastime. This aspect of the conspiracy alone accounted for $101,500 of the District Court's loss calculation, which would be sufficient by itself to sustain the two-level Guidelines enhancement that was applied.

In this context, we affirm the judgment of sentence imposed by the District Court.