**GREGORY WILLIAMS Appellant**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS Appellee**

D.C. Criminal App. No. 2005-56

District Court of the Virgin Islands

Division of St. Thomas and St. John, Appellate Division

August 5, 2008

503

504

505

NATALIE NELSON TANG-HOW, ESQ., St. Croix, USVI, *For the Appellant.*

MAUREEN PHELAN, ESQ., St. Thomas, USVI, *For the Appellee.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and STEELE, *Judge of the Superior Court, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

(August 5, 2008)

Appellant Gregory Williams ("Williams") appeals his conviction of first-degree murder, unauthorized carrying of a firearm during the commission of first-degree murder, first-degree assault, unauthorized carrying of a firearm during the commission of first-degree assault, and unauthorized possession of ammunition. For the reasons given below, the Court will affirm the conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 27, 2002, Khoy Smith ("Khoy") borrowed his girlfriend's car and drove to a basketball court in the area known as Tutu on St. Thomas, U.S. Virgin Islands. There, Khoy met his friend, Raymond Smith, Jr. ("Smith, Jr."). Khoy and Smith, Jr. began smoking marijuana in front of a building in a residential area known as Tutu High Rise. After about twenty minutes, a turquoise car approached. Williams exited the passenger side of the car with a gun in hand and told Khoy and Smith, Jr. not to move. Khoy began running away. Williams chased Khoy, and

subsequently shot and killed him. Williams ran back to the car and got back in. The driver, Kendall B. Williams ("Kendall"), and Williams drove off.[1]

In February, 2004, Williams was charged in a five-count information with first-degree murder, unauthorized carrying of a firearm during the commission of first-degree murder, first-degree assault, unauthorized carrying of a firearm during the commission of first-degree assault, and unauthorized possession of ammunition.

At a jury trial, the Government presented three witnesses whose testimony is relevant to this appeal. The Government called Smith, Jr., who testified that he saw Williams exit the car with a gun in hand and run after Khoy. Smith, Jr. further testified that he shortly thereafter heard a gunshot, and that Khoy was found dead the next day in nearby bushes. The Government also called Ismael Sasso ("Sasso"). Sasso testified that he was in the vicinity of the shooting at the time it occurred. Sasso further identified Kendall as the driver of the car and testified that he saw Williams running toward the car with a gun in hand shortly after hearing a gunshot. Finally, the Government called Makeda Petersen ("Petersen"), who was also in the vicinity of the shooting at the time it occurred. Petersen testified that she saw Kendall arrive in a green car. Petersen further testified that she saw another man, whom she did not identify, exit the car with a gun in hand. Petersen further testified that she saw that man chase Khoy, and that she shortly thereafter heard a gunshot.

The jury found Williams guilty of all five counts alleged in the information. Williams was subsequently sentenced to life imprisonment without parole for the murder conviction, 15 years in prison for the assault and firearms convictions, and seven years for the ammunition conviction. Williams thereafter filed this timely appeal.

Williams makes two principal arguments on appeal. Specifically, Williams argues that

1. he is entitled to a judgment of acquittal or a new trial because two of the eye-witnesses who identified Williams as the culprit were not credible, while the only eye-witness who was credible disclaimed Williams as the culprit, and

---

[1] Kendall was tried with Williams and found guilty of the same offenses.

2. the trial judge's conduct at trial denied Williams his right to a fair and impartial tribunal.

## II. DISCUSSION

### A. Jurisdiction

The Court has jurisdiction to review criminal judgments and orders of the Superior Court in cases in which the defendant has been convicted, and has not entered a guilty plea. *See* V.I. CODE ANN. tit. 4, § 33 (2006); Revised Organic Act of 1984, 48 U.S.C. § 1613(a) (2006).

### B. Standard of Review

#### 1. Sufficiency of the Evidence

The relevant standard for an insufficient evidence claim is "particularly deferential" to the jury. *United States v. Peppers*, 302 F.3d 120, 125 (3d Cir. 2002) (internal quotation and citation omitted). The Court must sustain the jury's verdict "if there is substantial evidence, taking the view most favorable to the Government, to support it." *United States v. Voigt*, 89 F.3d 1050, 1080 (3d Cir. 1996) (internal quotation and citation omitted). That is, the jury's verdict must stand if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)) (emphasis in original). Overall, "a claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir. 1990) (internal quotation and citation omitted).

██ "[I]t is axiomatic that [credibility] determinations are the sole province of the jury." *Virgin Islands v. Henry*, 232 Fed. Appx. 170, 174 (3d Cir. 2007); *see also United States v. Jannotti*, 673 F.2d 578, 598 (3d Cir.) (en banc), *cert. denied*, 457 U.S. 1106, 102 S. Ct. 2906, 73 L. Ed. 2d 1315 (1982) (holding that "[c]redibility determinations are for the jury"). The Third Circuit has held that the testimony of witnesses, standing alone, is sufficient to uphold a conviction. *See, e.g., United States v. Perez*, 280 F.3d 318, 344 (3d Cir. 2002) (holding that uncorroborated accomplice testimony may provide the exclusive basis for a criminal conviction); *Jacobs v. Redman*, 616 F.2d 1251, 1255 (3d Cir. 1980) (same); *see also United States v. O'Shea*, 426 F.3d 475, 481 (1st Cir. 2005) (finding the

testimony of a police witness who saw the defendant who was "a good distance" away throw a gun sufficient to support the jury's determination that the defendant possessed a weapon); *United States v. Williams*, 33 F.3d 876, 878 (7th Cir. 1994) (finding the testimony of police witnesses who saw the defendant twenty or more feet away throw a gun as he ran from them sufficient to support the jury's determination).

## 2. Fair and Impartial Tribunal

█ The Third Circuit has defined the right to be heard by a fair and impartial tribunal as one of the basic elements of due process. *See Sill v. Pennsylvania State University*, 462 F.2d 463, 469 (3d Cir. 1972); *see also United States v. Cross*, 128 F.3d 145, 148 (3d Cir. 1997) ("The right to a fair and impartial trial for the resolution of guilt lies at the very heart of the constitutional guarantee of due process."). "[I]f someone is deprived of his right to an impartial tribunal, then he is denied his constitutional right to due process, regardless of the magnitude of the individual and state interest at stake, the risk of error and the likely value of additional safeguards." *United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn & McDonnell, Inc.*, 787 F.2d 128, 138 (3d Cir. 1985).

██ Where an appellant contends that he was denied a substantial right, his claim is cognizable under the plain error doctrine. *Government of Virgin Islands v. Parrott*, 14 V.I. 19, 551 F.2d 553, 555 (3d Cir. 1977); *see also* FED. R. CRIM. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention."). To find plain error, the Court must find: 1) an error where a legal rule has been violated without a valid waiver by the defendant; 2) that the error was plain, meaning clear or obvious; and 3) that the error must have affected substantial rights of the defendant. *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993); *see also Sanchez v. Government of the Virgin Islands*, 34 V.I. 105, 921 F. Supp. 297, 300 (D.V.I. App. Div. 1996). The Third Circuit has reasoned that

> [i]n most cases, an error will be deemed to have affected substantial rights where it is prejudicial. Prejudicial error, affecting substantial rights, must have affected the outcome of the District Court proceedings. The inquiry concerning prejudice on plain error review is similar

to our inquiry into harmless error with the important difference that the defendant, rather than the government, bears the burden of persuasion in a plain error analysis.

*United States v. Turcks*, 41 F.3d 893, 898 (3d Cir. 1994).

## III. ANALYSIS

### A. Sufficiency of the Evidence

What Williams characterizes as an argument about sufficiency of the evidence is more accurately an argument about the credibility of Smith, Jr. and Sasso as witnesses. There is no doubt that, taking Smith, Jr.'s and Sasso's testimony as true, as the Court must, Williams was in possession of a firearm and shot Khoy. Williams argues, however, that such testimony is insufficient to establish his guilt because Smith, Jr.[2] and Sasso[3] were unbelievable. The Court is unpersuaded.

■ Issues surrounding the credibility of witnesses or the weight to be afforded evidence at trial are matters left to the factfinder. *See, e.g.,* *Petillo v. New Jersey*, 562 F.2d 903, 907 (3d Cir. 1977). This Court affords great deference to such determinations by the factfinder, who is uniquely positioned to view a witness' demeanor and to assess credibility. *See id.*; *see also Georges v. Government of the Virgin Islands*, 119 F. Supp. 2d 514, 523 (D.V.I. App. Div. 2000); *United States v. Delerme*, 8 V.I. 515, 457 F.2d 156, 160 (3d Cir. 1972). Such credibility determinations "should not be disturbed unless they are inherently incredible." *Petillo*, 562 F.2d at 907 (citations omitted); *see also* 29A AM. JUR. Evidence § 1447 (2003).

■ Testimony is deemed inherently incredible or improbable where it is "either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ." 29A AM. JUR. § 1447; *see also Edwards v. Virgin Islands*, Crim. App. No. 2002-078,

---

[2] Williams contends that Smith, Jr. was not credible because Smith, Jr. admitted that he did not know Williams, that he had been smoking marijuana with Khoy, that the ground where the murder took place was slippery, and that he admitted to seeing Williams for only a split second.

[3] Williams asserts that Sasso was not credible because Sasso admitted that he was both a liar and a thief, and was motivated to give a statement to the police because of a deal with the Government.

2004 U.S. Dist. LEXIS 25110, at *11 (D.V.I. App. Div. Nov. 30, 2004) ("The mere fact that testimony given by a witness in support of an issue is not plausible does not destroy its probative force. Where, however, the testimony of a witness is incredible, inherently or physically impossible and unbelievable, inherently improbable and irreconcilable with, or contrary to physical facts and common observation and experience, where it is so opposed to all reasonable probabilities as to be manifestly false, or is contrary to the laws of nature or to well-known scientific principles . . . , it is to be disregarded as being without evidentiary value even though uncontradicted.").

In this appeal, Williams does not explicitly argue, nor does the record reflect, that either Smith, Jr.'s or Sasso's testimony was so "manifestly false" that no reasonable person could take it as true. The thrust of Williams' argument is merely that the two eye-witnesses who identified him as the culprit were not credible. That argument is unavailing.

■ This Court has noted in the past that it "is bound by the jury's determination of witness credibility, even where the testimony may be contradictory." *See Government of the V.I. v. Peters*, 121 F. Supp. 2d 825, 830 (D.V.I. App. Div. 1998); *see also United States v. Holland*, 76 Fed. Appx. 452, 454 (3d Cir. 2003) "[W]e do not make an independent determination of the witnesses' credibility."); *United States v. Gross*, 511 F.2d 910, 920 n.15 (3d Cir. 1975) ("Appellant's numerous contentions challenging the sufficiency of the evidence relate merely to the credibility of [witnesses], which we cannot evaluate for ourselves on appeal."); *United States v. Brawer*, 205 F.2d 153, 153 (3d Cir. 1953) ("Since all defendants took the stand, the credibility of each was fully explored by lengthy cross-examination both as to prior inconsistent statements and as to past criminal records. The question of who was telling the truth in what part of his story was submitted to the jury under proper instructions as it should have been.").

■ Where, as here, the jury has returned a verdict of guilty, the Court "is bound to accept the evidence in the light most favorable to the prosecution." *Gross*, 511 F.2d at 920 n.15; *see also United States v. De Cavalcante*, 440 F.2d 1264, 1273 (3d Cir. 1971). Williams has thus failed to meet his burden of proving that the evidence adduced at trial was insufficient to sustain his conviction. *See, e.g., United States v. Jackman*, 72 Fed. Appx. 862, 865 (3d Cir. 2003) (noting that the "evidence, especially when considered in light of the substantial discretion afforded

to the juries who actually see and hear the testimony of the parties and witnesses and can thereby more properly judge their credibility, is sufficient to support [the] conviction"); *United States v. Trice*, Crim. No. 95-124-8, 1996 U.S. Dist. LEXIS 15154, at *8 (E.D. Pa. Oct. 11, 1996) ("[The defendant's] only defense was to attack the credibility of these witnesses. The determination of the credibility of witnesses is the sole province of the jury, and they were free to believe the testimony of these three witnesses. There was, therefore, sufficient evidence to support the conviction . . . .") (internal citations omitted).

Having carefully reviewed the record of this case, the Court finds that Williams is not entitled to a judgment of acquittal or, in the alternative, a new trial based on his argument that the witness testimony at trial was not credible.

## B. Fair and Impartial Tribunal

 Williams' second argument on appeal is that his conviction should be vacated because the trial judge "tainted" his right to a fair trial by "inappropriately insert[ing] his own opinion relating to issues of fact and ma[king] comments to the jury that undermined what should have been his objective and impartial appearance." [Appellant's Br. 12.][4] Williams contends that the trial judge's comments undermined the credibility of some witnesses and bolstered that of others. In support of that contention, Williams points to three examples.[5] Those examples, however, considered either individually or collectively, do not warrant a reversal of Williams' conviction.

---

[4] The parties dispute the applicable standard of review with respect to this issue. The Government asserts that because Williams did not raise an objection at trial, the plain error standard applies. Williams contends that he did raise an objection in the form of a motion for a mistrial. Williams thus suggests "a much broader standard of review . . . ." [Appellant's Br. 6.] Both parties are at least partially incorrect. The Third Circuit has held that "it is settled that an appellate court will take notice of 'plain error' in spite of lack of proper objection below." *United States v. Gray*, 468 F.2d 257, 261 (3d Cir. 1972); *see also United States v. Ortega-Chavez*, 682 F.2d 1086, 1088 (5th Cir. 1982) ("It is well-established that the failure to timely and properly raise these contentions before the district court, either through objection, motion for mistrial, or other appropriate manner, precludes us from reviewing them unless they constitute plain error . . . ."). Thus, where, as here, a substantial right is implicated, the appropriate standard of review is the plain error standard. *Id.*

[5] Williams states that although he offers only three examples, he "wishes" that time permitted him to provide "a more thorough treatment of this important aspect of the trial atmosphere." [Appellant's Br. 13.] The Court notes that on September 20, 2005, Williams was

■ "It is well-established that the conduct of a trial judge must be measured by a standard of fairness and impartiality." *Greener v. Green,* 460 F.2d 1279, 1280 (3d Cir. 1972) (quoting *Nordmann v. National Hotel Company,* 425 F.2d 1103, 1109 (5th Cir. 1970)). "[A] few isolated, allegedly prejudicial comments by the trial judge are not sufficient to warrant a reversal." *United States v. Wilensky,* 757 F.2d 594, 598 (3d Cir. 1985); *see also United States v. Singer,* 710 F.2d 431, 436 (8th Cir. 1983) (en banc) (reasoning that a few improper comments are not necessarily sufficient to require reversal).

■ The Third Circuit employs a sliding scale approach to assess the propriety of a trial judge's comments before the jury. *See United States v. Olgin,* 745 F.2d 263, 269 (3d Cir. 1984). Under this sliding scale approach, the court is to consider and balance four factors: the materiality of the comment, its emphatic or overbearing nature, the efficacy of any curative instruction, and the prejudicial effect of the comment in light of the jury instruction as a whole. *Id.* at 268.

■ First, the court considers the materiality of the challenged comment. That is, whether the comment concerns a matter central to the defense, rather than a tangential issue. *Id.* ("The reviewing court should be more concerned with a comment on a matter central to the defense than with a comment on a tangential issue.") (citing *United States v. Anton,* 597 F.2d 371, 374 (3d Cir. 1979)).

■ Second, the court considers the strength of the challenged comment. The court must be concerned with "emphatic or overbearing remarks" that a jury may accept as controlling. *United States v. Gaines,* 450 F.2d 186, 189 (3d Cir. 1971), *cert. denied,* 405 U.S. 927, 92 S. Ct. 978, 30 L. Ed. 2d 801 (1972).

■ Third, the efficacy of any curative instruction is considered. To be effective, the judge should clearly explain to the jury that it is free to disregard his remarks and must determine the facts and decide the case on its own. Both the number and clarity of such instructions are to be considered. *See Gaines,* 450 F.2d at 189.

■ Finally, the court must assess the prejudicial effect of the comments in light of the jury instruction as a whole. A potentially

granted an additional two weeks to file his brief in this matter. The record does not reflect that Williams availed himself of that additional time.

prejudicial comment cannot be evaluated in isolation, out of context. Rather, the reviewing court must examine the entire jury instruction to assess the true impact of the challenged remark. *See id.* at 189-90.

In Williams' first example, the trial judge's comment occurred during the cross-examination of Smith, Jr. by defense counsel.[6] Defense counsel asked Smith, Jr. whether he had been smoking marijuana before the shooting. Smith, Jr. replied in the affirmative. The Government's counsel objected on grounds of relevancy. Defense counsel argued that Smith, Jr.'s testimony about whether he had been smoking marijuana was relevant to show Smith, Jr.'s ability to perceive the shooting. The trial judge sustained the objection. Defense counsel continued to question Smith, Jr. about the effects of smoking marijuana on Smith, Jr.'s state of mind. The Government's counsel objected again. At that moment, the following exchange occurred:

> Defense Counsel: Your eyes get red when you're smoking weed?
>
> Smith, Jr.: Yes.
>
> Defense Counsel: Does it affect your ability to move?
>
> Smith, Jr.: No, sir.
>
> Defense Counsel: Can you — do you drive a car?
>
> Smith, Jr.: Yes, sir.
>
> Defense Counsel: Can you drive a car the same when you're not on weed as when you're on weed?
>
> Government's Counsel: Objection, Your Honor. They don't have an expert.
>
> The Court: But get to the — get to the perception. Because I'll tell you something. There's a lot of people I does smell that they be smoking, smoking thing, as you pass the cars, and they're better drivers than a lot of these other people on the road that just can't drive. So if we're going to get into his perception then ask him about his perception but remember now, you got to remember now, we're not going to have anybody coming here going tell us about the perception of how smoking weed is going to affect people. You know? And we're not going to

---

[6] Williams provides only a small excerpt of the comment. The Court will reproduce the exchange in its entirety for contextual purposes.

have a doctor. But let's deal as to him. And let's not get into driving because driving doesn't have anything to do with it.

Defense Counsel: I withdraw that.

The Court: All right. It has to do with, as you said, his perception. He said that, you know, it makes his eyes red. All right. But let me ask you this, can you see when you smoke the weed?

Smith, Jr.: Yes, sir.

The Court: Do you have to wear glasses when you smoke the weed?

Smith, Jr.: No, sir.

[Supplemental App. Volume II 102-03.]

Williams asserts that the trial judge's comments bolstered Smith, Jr.'s credibility because it suggested that smoking marijuana is not detrimental to a person's percipience. While the Court does not condone what appear to be superfluous comments by the trial judge, the Court does not find that Williams has met his burden of showing that his substantial rights were prejudiced by those comments or that the outcome of the trial would have been different absent those comments.

■■■ While Smith, Jr.'s credibility was arguably material to Williams' defense, a comment about the effects of smoking marijuana on one's ability to drive was not material to the defense. Moreover, even assuming the comment did bear on an issue material to the defense, the comment was not emphatic or overbearing. *Cf. Anton*, 597 F.2d at 372-73 (reversing a conviction where the trial judge commented that he regarded the defendant "as devoid of credibility" and that he did "not believe [the defendant] absolutely and in all respects"); *Stevens v. United States*, 306 F.2d 834, 838 (5th Cir. 1962) (reversing a conviction where the trial judge said, "All right, I don't believe I want to hear any more testimony from this witness. I want to certify in the record that the Court wouldn't believe him on oath, and I don't want to waste the jury's time taking any more testimony from him").

Moreover, on Williams' motion, the trial judge agreed to give a curative instruction. The trial judge later addressed the jury as follows:

[A]nything that I have said in terms of marijuana, that is — I'm going to order that stricken from the record. What that means is that in your consideration of this case, you're not to consider anything whatsoever

that I mentioned about marijuana. Only what the witnesses said from the witness stand.

[Supplemental App. Volume II 184.] That instruction unambiguously directed the jury to disregard the trial judge's comments about the effects of smoking marijuana. *See, e.g., Owens v. United States*, 483 F.3d 48, 68 (1st Cir. 2007) ("While we continue to think the . . . the judge's comments were ill-advised, the quantity of the evidence against Owens, the jury's discerning verdict, [and] the curative instructions . . . all militate against a finding of prejudice."); *Brown v. Virgin Islands*, 40 V.I. 141, 146-47 (D.V.I. App. Div. 1998) ("Even if the trial judge's [comment] was in error, the harm caused was remedied by the curative instruction given to the jury and the substantial rights of the appellant accordingly were not affected."); *cf. Greener*, 460 F.2d at 1280-81 (remanding a case for a new trial where, *inter alia*, "the error [was not] cured by the judge's later ambiguous admonition to the jury") (emphasis supplied).

 Finally, the trial judge made clear that the jury was the sole determiner of credibility and fact, and thus did not overstep the permissible limits of comment.[7] *See Gaines*, 450 F.2d at 189; *United States v. Rickey*, 457 F.2d 1027, 1032 (3d Cir. 1972) ("It is well established that a federal judge is entitled to comment on the evidence and the credibility of the witnesses as long as he makes clear . . . that the jurors

---

[7] The trial judge instructed the jurors as follows:

As the trier of facts *you are called upon to determine the believability and credibility of the witnesses and the weight to be given to each witness's testimony. It is you who will make the determination.* To make this determination you should carefully scrutinize the testimony as given. Consider it in light of your experience and understanding, and observe intensely and with care the manner, the demeanor, the attitude of each witness as he or she testifies. . . . And to in addition to that, the extent to which that witness's testimony is either supported or contradicted by any other evidence or testimony.

[Supplemental Appx. Volume I 21] (emphasis supplied).

The trial judge further stated:

Now during the course of the trial, I will undoubtedly be called upon to make certain legal rulings. I instruct you, ladies and gentlemen of the jury, to bear in mind constantly that whatever that ruling may be, it deals strictly with a legal concern, and you may not, therefore, consider any legal ruling which I may make to indicate any opinion of any kind about any fact on the part of the Court. I am in no way indicating any leaning about any factual issue, *nor am I suggesting anything regarding the credibility of any witness, or the weight to be given to that witness's testimony by any of my rulings.*

[*Id.* at 22-23] (emphasis supplied).

are the 'sole judges of the evidence' and of the credibility of the witnesses."); *see also United States v. Carlos*, 478 F.2d 377, 379 (9th Cir. 1973) ("Normally, if the appropriate cautionary instructions are given it is made clear to the jury that they are the final arbiters of the credibility of witnesses and there will be no reversible error.").

Williams' second and third examples of what he alleges are the trial judge's improper comments likewise do not support a reversal of his conviction.[8] Those two comments, Williams asserts, "exacerbated" the trial judge's first comment. That assertion finds little support.

---

[8] In Williams' second example, the trial judge was contrasting his policy of allowing different attorneys for a party to conduct the direct and redirect examination of a witness. The trial judge addressed the jury as follows:

> So, my policies might be different from all the other judges. But here in the Territorial Court. But then, again, I have been here longer than all the other judges. I'm the most senior associate judge, so I don't — I have been doing this for a long time, and nobody has every found fault with it. So I don't follow the young folks. I go with my own policy. I've been around here longer than all of them. Three of them put together don't have as much years as I have. So, I have my own policy.

[Supplemental App. Volume II 257-58.] Williams asserts that this example "exacerbates the first" in that it "involves the trial judge elevating his position as the authority figure." [Appellant's Br. 14] (emphasis in original).

Williams' third example concerns comments the trial judge made during Petersen's testimony. Outside the presence of the jury, the Government moved to have Petersen declared a hostile witness. The trial judge granted the motion. Before Petersen's testimony resumed, the trial judge addressed the jury:

> Ladies and gentlemen of the jury, while you were out we had a dialogue to the side there, and the Government made a motion for me to declare Miss Petersen to be a hostile witness. It doesn't mean that she's truculent or she's getting ready to fight or to go anywhere. Hostile witness, as that terms is used, because it deems her to be uncooperative and evasive, and particularly twice she has rejected questions by the Government calling her. So I've declared her to be a hostile witness. And what that means is that the Government is now allowed to ask her leading questions on direct examination. So that is the purpose what you call — the Government wanted me to declare her a hostile witness because that is one of the exceptions to the rule of asking leading questions on direct examination.

[Supplemental App. Volume III 242-43.] Williams contends that this comment "likewise exacerbates the first" and "poisoned the waters of objectivity" because it discredited Petersen by labeling her "uncooperative and evasive." [Appellant's Br. 15-16.]

While the trial judge's choice of words may have been somewhat gratuitous, the comment does little more than reflect the applicable rules for asking leading questions of an adverse witness. *See, e.g., United States v. George*, 17 V.I. 624, 625 F.2d 1081, 1087 (3d Cir. 1980) ("With respect to the trial judge's comment that an individual who questions the authority of an arresting officer does so at his peril, the remark merely states the applicable

■ The Court has already found that the first comment did not harm Williams' substantial rights. Consequently, Williams' contention that the second and third comments compounded the harm of the first comment lacks merit. Furthermore, those comments, even if considered on their own, do not rise to the level of plain error because they were even less emphatic and overbearing than the first comment. Finally, Williams fails to explain how the second and third comments actually prejudiced his substantial rights. Consequently, he has not met his burden of establishing plain error. *See, e.g., United States v. Boone*, 279 F.3d 163, 174 (3d Cir. 2002) ("Here [the defendant] never even attempts to show how the disputed testimony constitutes plain error. He merely claims that he was harmed by the 'improper' cross-examination. We do not believe this testimony amounts to plain error, and he has not met his burden of showing that it was plain error.").

■ The Third Circuit has remarked that "the right to a fair trial does not translate into the right to a perfect trial." *See Wilensky*, 757 F.2d at 599 (citing *United States v. Robinson*, 635 F.2d 981 (2d Cir. 1980)); *see also United States v. Denardi*, 892 F.2d 269, 270 (3d Cir. 1989) ("Perfect equanimity on the part of a trial judge is not mandated by the Constitution."); *Virgin Islands v. Bedford*, 671 F.2d 758, 762 (3d Cir. 1982) (quoting *Brown v. United States*, 411 U.S. 223, 231-32, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973)). On balance, the trial judge's comments in this case, however unfortunate, do not warrant a reversal of Williams' conviction when taken in context and in light of the overall fairness of the trial. *See, e.g., Saada*, 212 F.3d at 223 (finding no plain error where the trial judge "advis[ed] the jury of certain facts regarding [a witness's] misconduct "because the fair and neutral approach of the District Court is evident from the overall record"); *cf. Rush v. Smith*, 56 F.3d 918, 923 (8th Cir. 1995) (reversing and remanding a case to the district court where "the

---

law."); *see also United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 231, 60 S. Ct. 811, 84 L. Ed. 1129 (1940) ("That most of [the witnesses] were hostile witnesses — evasive and reluctant to testify — clearly appears from a reading of their entire testimony."); *United States v. Brown*, 603 F.2d 1022, 1026 (5th Cir. 1979) (noting that a hostile witness "was both evasive and adverse to the government"); Fed. R. Evid. 611(c) ("Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.").

trial judge's comments [about racial solidarity] substantially affected [the plaintiff's] right to a fair trial").

 As a final matter, in his reply brief, Williams argues that "the Government violated [his] rights to a fair trial by failing to disclose — as required by *Brady* and *Giglio* — the deal the Government made, in exchange for his testimony, with key witness Ismael Sasso." [Appellant's Reply Br. I.] Because Williams raises this argument for the first time in his reply brief, the Court need not consider it in this appeal. *See Virgin Island v. Henry*, 232 Fed. Appx. 170, 175 (3d Cir. 2007) (holding that the lower court did not err in not addressing the appellant's arguments on their merits where those arguments were raised for the first time in the appellant's reply brief); *Gambino v. Morris*, 134 F.3d 156, 161 n. 10 (3d Cir. 1998) (holding that the court will "not consider arguments raised on appeal for the first time in a reply brief"); *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 204-05 n. 29 (3d Cir. 1990) (same).

## IV. CONCLUSION

For the reasons given above, the Court finds that Williams has not met his burden of proving that there was insufficient evidence to sustain his conviction. The Court further finds that Williams has not met his burden of showing that the trial judge's comments amounted to plain error. Accordingly, the Court will affirm Williams' conviction. An appropriate judgment follows.